## Commonwealth v. Herr

*Jeffrey S. Wasileski, assistant district attorney,* for the commonwealth.

*J. Wesley Oler,* for defendant.

BAYLEY, *J.,* May 11, 1990 — Defendant, Raymond Herr, is charged with one count of riot on October 26, 1989, arising out of disturbances at the State Correctional Institution in Camp Hill where he was, at the time, a sentenced inmate. The criminal complaint charges that defendant:

"Did intentionally, knowingly or recklessly participate with John A. Pace, Robert Achuff, Anthony Blackwell and approx. 50 other inmates in the course of a felony or misdemeanor to-wit; criminal attempt (homicide and arson) in that he was with a group of approx. 50 rioters infront [sic] of the Control Center that was occupied by approx. 51 people. These rioyers [sic] were breaking windows and lighting mop heads and throwing then [sic] into the Control Center. The rioters were blocking the door infront [sic] of the Control Center and they were also yelling that they were going to kill the victims trapped inside the Control Center."

Defendant was bound over for court following a preliminary hearing held before a district justice on February 23, 1990. He has filed a petition for writ of habeas corpus and has stipulated with the commonwealth that it shall be decided on the record of the proceedings of the preliminary hearing.

Taking the evidence in a light most favorable to the commonwealth shows that Daryl Adams, a correctional officer at the State Correctional Institution at Camp Hill, was in a control center inside the institution on October 26, 1989. He testified that inmates were outside trying to break in and gain access to the center. They were smashing glass and throwing things. He saw an inmate, Anthony Blackwell, throw a smoldering mop head, and he saw other inmates tear out an air conditioning unit and start fires. He testified that some inmates were yelling such things as, "We're going to kill all you white motherfuckers," or words to that effect, along with other obscenities. With respect to defendant, Raymond Herr, Mr. Adams testified that he saw him outside in the yard "roaming around, looking in." Mr. Adams did not observe or hear defendant utter any of the obscenities or threats being made by

the rioters, nor did he see him throw anything. He testified that the prevailing conditions in the institution at that time were "pandemonium," and that prisoners had been forced to flee from their burning quarters. He answered "yes" to the question: "Basically, what you're saying as far as Mr. Herr is concerned, is that you saw him present at the scene?"

The commonwealth maintains that this evidence is sufficient to detain defendant even though there is no evidence of any specific riotous acts committed by defendant. The commonwealth argues that since the entire prison population was to be in lockdown status, and inmates including defendant were to be in their housing units, that defendant can be convicted of riot based solely on the evidence that he was outside of his cell and cell block, and was at the scene while a riot was taking place.

In Pennsylvania the established method for testing a finding of a prima facie case pretrial is by a petition for a writ of habeas corpus. *Commonwealth v. Hetherington,* 460 Pa. 17, 331 A.2d 205 (1975). In *Liciaga v. Court of Common Pleas,* 523 Pa. 258, 566 A.2d 246 (1989), the Supreme Court stated that the standard for determining whether a defendant is properly held for court is:

"(a) that the record reveals a prima facie showing that a crime or crimes have been committed; *Commonwealth v. Prado,* 481 Pa. 485, 393 A.2d 8 (1978); and (b) that the defendant was in some way legally responsible. *Commonwealth v. Mullen,* [460 Pa. 336, 333 A.2d 755 (1975)]."

That the evidence shows there was a riot at the State Correctional Institution at Camp Hill at the time defendant is charged with a count of riot, is beyond cavil. The Crimes Code, at 18 Pa.C.S. §5501, defines the crime of riot as:

"A person is guilty of riot, a felony of the third degree, if he participates with two or more others in a course of disorderly conduct;

"(1) with intent to commit or facilitate the commission of a felony or misdemeanor;

"(2) with intent to prevent or coerce official action; or

"(3) when the actor or any other participant to the knowledge of the actor uses or plans to use a firearm or other deadly weapon."

Our research reveals that in order to find defendant guilty of riot under section 5001, the commonwealth would have to prove beyond a reasonable doubt: (1) that this *defendant* participated with two or more others in the course of disorderly conduct, (2)(a) with *intent* to prevent or coerce official action, or (b) with *intent* to commit or facilitate the commission of a felony or misdemeanor, or (c) *when this defendant* or any other participant *to the knowledge of this defendant* used or planned to use a firearm or other deadly weapon. For persons to participate in the course of disorderly conduct as defined in section 5503 of the Crimes Code, *they* must (a) have a *common intent* to cause annoyance or alarm, or (b) as a *group* recklessly create a risk of annoyance or alarm while they engage in or encourage other members of the group who engage in, a course of (a) fighting or threatening or violent or tumultuous behavior, or (b) making unreasonable noise, or (c) using obscene language or making an obscene gesture, or (d) creating hazardous or physically offensive conditions by acts which serve no legitimate purpose of those who do them.

Defendant may not be convicted of riot if he was merely present at the State Correctional Institution during a riot even if he was out of his cell at a time when he should have been in his cell. In order to

convict this defendant of riot requires proof that he actively participated in a riot. The essential element of riot is group action. A defendant participates with two or more others in the course of disorderly conduct if he either engages in or encourages such conduct to take place. If such group conduct is done with intent to facilitate the commission of a felony or misdemeanor, or with intent to prevent or coerce official action, or if defendant or any participant to the knowledge of defendant used or planned to use a firearm or other deadly weapon, then such group conduct of two or more others in the course of disorderly conduct becomes a riot; however, defendant, to be convicted of riot, must have engaged in or encouraged others to engage in such a riot. See *Commonwealth v. Reeves,* 255 Pa. Super. 409, 387 A.2d 877 (1978). See also, *Commonwealth v. Zwierzelewski,* 177 Pa. Super. 141, 110 A.2d 757 (1955).*

Although intent may be inferred from one's "conduct and statements at the time of an incident," see *Commonwealth v. Wilks,* 250 Pa. Super. 182, 378 A.2d 887 (1977), the only evidence presented by the commonwealth as to defendant, was that he was present in the State Correctional Institution during a riot. There is no evidence that he either engaged in or encouraged others to engage in the riot, or that he, in conjunction with others, participated in a course of disorderly conduct. The evidence shows that there were inmates at Camp Hill who were forced out of their cells by rioters who burned and destroyed their facilities. To suggest

---

* *Reeves* was decided under section 5501 of the 1972 Crimes Code. *Zwierzelewski* is a prison riot case which arose under the Penal Code of 1939; however, it enunciates the principle that active encouragement or participation by a defendant is necessary to sustain a conviction on a charge of riot.

that every inmate who can be identified as being out of his cell and cell block during the course of a riot that demolished a substantial portion of the institution's facilities, can be convicted of riot, without evidence of his participation in or his encouragement of such conduct, is incorrect. Since that is the sum and substance of the commonwealth's case against this defendant, *there has been no prima facie evidence showing that he committed a crime.* Therefore, the following order is entered:

## ORDER OF COURT

And now, May 11, 1990, defendant's petition for a writ of habeas corpus is granted. The charge of riot against defendant is dismissed.