465 A.2d 681

**COMMONWEALTH of Pennsylvania**

**v.**

**Luciano SPENNATO, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 16, 1983.

Filed Sept. 9, 1983.

Petition for Allowance of Appeal Denied Feb. 8, 1984.

Robert N. Speare, Media, for appellant.

David E. Fritchey, Assistant District Attorney, Media, for Commonwealth, appellee.

Before CERCONE, President Judge, and JOHNSON and MONTEMURO, JJ.

MONTEMURO, Judge:

This is an appeal from the judgment of sentence of the Court of Common Pleas of Delaware County entered against the appellant, Luciano Spennato. The appellant was convicted of perjury[1] and false swearing in official matters.[2] After denial of his post-verdict motions, appellant was sentenced to two (2) to twenty-three (23) months imprisonment.

The charges against the appellant arose out of a sworn statement given by the appellant to an investigatory panel of the Pennsylvania Crime Commission.[3] The Crime Commission was conducting an investigation of the possible involvement of organized crime in the pizza and cheese industry in Southeastern Pennsylvania.

In his statement before the Crime Commission, the appellant related that he had immigrated from Italy to the United States in 1971. Soon thereafter, he began to work at various jobs in pizza shops, and he eventually became associated with a Mr. John Scotto at a pizza shop in New Jersey.

The shop in New Jersey ceased operations and the appellant began to work at another pizza shop owned by John Scotto. The shop was called Scotto Pizza and was located in the Granite Run Shopping Mall, in Delaware County. In 1976, the appellant became manager of Scotto Pizza, and in 1977, he became the proprieter by virtue of a sub-leasing agreement with Scotto. It was the operation of this shop which brought the appellant to the attention of the Crime Commission.

1. 18 Pa.C.S.A. § 4902.

2. 18 Pa.C.S.A. § 4903(a).

3. The appellant appeared, pursuant to a subpoena, at the offices of the Crime Commission in St. Davids, Delaware County, on July 7, 1978. Presiding over the proceeding was Joan Weiner, the Acting Executive Director of the Crime Commission. The appellant was questioned by Special Agent-in-Charge Frank Booth, and by Special Agent Carl Brown. The appellant was represented by counsel.

The appellant was questioned extensively concerning the finances and operation of the pizza shop. He stated that he sublet the shop at a cost of two hundred ($200.00) dollars per week between May, 1977 and January, 1978, and five hundred ($500.00) dollars per week thereafter. This sum was paid by check directly to Scotto, who would pick it up weekly or bi-weekly. The check was drawn from a business checking account in the name of Scotto Pizza at the Southeast National Bank. The appellant stated that all cash register receipts were deposited weekly into this account and that all expenses were paid out of this account.

In the course of the interrogation, the following exchange took place between Agent Brown and the appellant:

Q. Do you ever make deposits into any other accounts other than your own?

A. Never.

(N.T. July 7, 1978, p. 46)

Investigators of the Crime Commission, acting on information received, later discovered that between May 11, 1977 and September 26, 1978, the appellant had made numerous deposits into the savings account of John and Jennie Scotto. The deposits were always in the amount of two hundred ($200.00) dollars; always in cash; and usually made weekly, although in some weeks no deposit was made and in other weeks as many as three deposits were made. When the account was closed in September of 1978, it contained almost fourteen thousand ($14,000) dollars, including interest.

The appellant was arrested and charged with perjury and false swearing based upon the above-quoted question and answer. At trial, the Commonwealth produced the testimony of three bank tellers, each of whom testified that they remembered the appellant making the deposits. John Scotto also testified that the appellant had made the deposits. Finally, Joan Weiner and Carl Brown of the Crime Commission testified that the appellant had been administered an oath, and that he made the statement in question.

In his defense the appellant asserted he misinterpreted the question posed to him. He interpreted it as an inquiry into whether he had ever deposited money from the business into any other account. He testified that the cash payments were from his personal funds and were in payment for the equipment in the pizza shop, pursuant to an agreement with John Scotto to pay him five thousand ($5,000.00) dollars for the equipment. He testified that the payments were structured in this manner because of the inconvenience of transferring the money to Scotto's residence in Cherry Hill, New Jersey, and to establish a line of credit for Scotto at the Southeast National Bank.

On appeal, three issues are raised for our consideration. One, that the evidence was insufficient to support the convictions. Two, that the oath was administered by a person who was not authorized by law to do so. And finally, that the appellant was prejudiced by the repeated references to the Crime Commission and to organized crime. We need not reach the latter arguments in as much as we find the evidence to be insufficient to sustain the convictions.

The standard which we are required to apply in reviewing the appellants' insufficiency claim was set forth by this court in *Commonwealth v. Volk,* 298 Pa.Super. 294, 300, 444 A.2d 1182, 1184 (1982), in which the court said:

First, we must regard all the evidence in the light most favorable to the Commonwealth, accepting as true all evidence upon which the fact finder could have based the verdict and then we must ask whether that evidence along with all reasonable inferences to be drawn therefrom was sufficient to prove guilt beyond a reasonable doubt. *Commonwealth v. Anderson,* 265 Pa.Super. 494, 402 A.2d 546 (1979); *Commonwealth v. Eddington,* 255 Pa.Super. 25, 386 A.2d 117 (1978); *Commonwealth v. Luther,* 266 Pa.Super. 240, 403 A.2d 1329 (1979).

The parties do not dispute that the appellant made the deposits into the Scottos' account at Southeast National Bank; nor do they dispute that the appellant made the

statement before the Crime Commission. Rather the appellant contends that, under his interpretation of the question asked, he gave an answer which he believed to be true. Alternatively, he contends that the statement was not material to the Crime Commission proceeding.

The crime of perjury is defined in 18 Pa.C.S.A. § 4902(a), which states:

A person is guilty of perjury, a felony of the third degree, if in any official proceeding he makes a false statement under oath or equivalent affirmation, or swears or affirms the truth of a statement previously made, when the statement is material and he does not believe it to be true.

See also *Commonwealth v. Bidner,* 282 Pa.Super. 100, 422 A.2d 847 (1980); *Commonwealth v. Lafferty,* 276 Pa.Super. 400, 419 A.2d 518 (1980); *Commonwealth v. Yanni,* 208 Pa.Super. 191, 222 A.2d 617 (1966).

The crime of false swearing in official matters is defined by 18 Pa.C.S.A. § 4903(a), which states:

A person who makes a false statement under oath or equivalent affirmation, or swears or affirms the truth of such a statement previously made, when he does not believe the statement to be true is guilty of a misdemeanor of the second degree if:

(1) the falsification occurs in an proceeding;

(2) the falsification is intended to mislead a public servant in performing his official function.

As in any criminal prosecution, the Commonwealth has the burden of proving each element beyond a reasonable doubt. Nevertheless, the Commonwealth is able to prove the charge by circumstantial evidence as long as it is legally competent and sufficient in volume and quality to meet the burden of proof. *Id.*

With regard to the appellant's contention that he believed his statement to be true, given his interpretation of the question and the context of the question, this is an especially difficult determination in that it deals with the appellant's subjective intent. As such, it is a determination

which of necessity relies to a great extent on the circumstantial evidence presented by the Commonwealth. *Commonwealth v. Broughton,* 257 Pa.Super. 369, 390 A.2d 1282 (1978); *Commonwealth v. Karafin,* 224 Pa.Super. 449, 307 A.2d 327 (1973).

The appellant's contention is well taken. The questions posed by the agents of the Crime Commission dealt extensively with the appellant's handling of the cash register receipts of Scotto Pizza, both as manager and as proprieter. Agent Brown testified at trial that one aspect of the Crime Commission's investigation was to uncover any "under the table" payments or deposits; however, this aspect of the investigation was never raised openly and honestly. Instead, one question was asked concerning any other deposits made by the appellant, and immediately the interrogation swept off on another tack.

The interrogation was extremely lengthy encompassing as it did some 96 pages of transcribed testimony. Despite the fact that the deposits in question were the prime objective of the investigation, the investigators left the matter suspended in mid-air without any attempt to specify or clarify the underlying facts. Agent Brown testified at trial that he knew deposits were being made into the account of John and Jennie Scotto because their bank records had been subpoenaed in May, 1978. Furthermore, he testified that sometime in 1977 he had received information from a confidential source that the appellant was making the deposits; yet he did not confront the appellant with any specific questions other than the one vague and isolated inquiry.

Under the circumstances it cannot be said that the Commonwealth has sustained its burden of proving beyond a reasonable doubt that the appellant knew his answer to be false. The interrogation tactic of the Crime Commission investigator reeks of unfairness in that it deprived the appellant of any opportunity to be apprised of the impact of the question; a question so patently ambiguous that to allow it to serve as the basis for a perjury prosecution is contrary to all notions of fairness and justice. The hit and

run nature of the interrogation raises the question of the purpose of the Crime Commission's investigation. Did it truly seek to discover the source of the deposits into the Scotts' account or was it only an attempt to trap the appellant? If the former was the purpose, then logically Agent Brown should have confronted the appellant with the information in his possession, however he did not. In any event, this court will not condone the kind of interrogation used in this case.

We conclude that there is insufficient evidence, circumstantial or otherwise, of the appellant's subjective knowledge of the falsity of his answer. The Commonwealth's failure to sustain its burden of proof in this regard necessitates that we vacate the judgments of sentence and discharge the appellant.

Judgments of Sentence vacated. The appellant is discharged.

JOHNSON, J. did not participate in the deliberation or decision of this case.