701 A.2d 488

COMMONWEALTH of Pennsylvania, Appellee,

v.

Cornelius THORPE, Appellant.

Supreme Court of Pennsylvania.

Argued Jan. 29, 1997.

Decided Sept. 17, 1997.

Rosemarie Griesmer, West Chester, for Cornelius Thorpe.

Stuart Suss, West Chester, for the Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION OF THE COURT

FLAHERTY, Chief Justice.

Cornelius Thorpe was charged with robbery conspiracy and related offenses in January, 1993. The Commonwealth was unprepared to proceed at several preliminary hearings, and after Thorpe had been imprisoned for two months, the case was dismissed.

On October 3, 1993, the charges were refiled, and on August 13, 1994, Thorpe was rearrested. The Commonwealth again was unprepared to proceed at four consecutive preliminary hearings. Again, charges were dismissed on November 14, 1994, this time after Thorpe had spent an additional three months in jail.

Immediately after the dismissal, charges were refiled for the third time. A preliminary hearing was held November 29, 1994, and the district justice dismissed the case with prejudice on the grounds that a prima facie case had not been presented.

On December 14, 1994, the Commonwealth filed a motion requesting temporary assignment of an issuing authority pursuant to Pa.R.Crim.P 23(b).[1] The trial court initially granted the motion ex parte, but upon Thorpe's motion and after a

1. Pa.R.Crim.P. 23(b)(1) provides:

**(b) Temporary Assignment.**
(1) The president judge may assign temporarily the issuing authority of any magisterial district to serve another magisterial district whenever such assignment is needed to satisfy the requirements of paragraph (a)(1) [availability of an issuing authority], to insure fair and impartial proceedings, or otherwise for the efficient administration of justice.

hearing, the court set aside the temporary assignment of issuing authority.

■ The Commonwealth appealed from the trial court's order and the Superior Court vacated the lower court's order, remanding the case for a fourth arrest and preliminary hearing. We granted allocatur to consider the propriety of the Superior Court's granting of the Commonwealth's request for a temporary assignment of issuing authority.

■ As a general matter, a defendant may be rearrested after charges have been dismissed at a preliminary hearing so long as the statute of limitations has not expired.[2] *Commonwealth v. Revtai*, 516 Pa. 53, 74, 532 A.2d 1, 11 (1987). The Superior Court has held, however, that in a case in which the Commonwealth has repeatedly rearrested the defendant in order to harass him, or if the rearrest results in prejudice, the prosecution may be barred. *See Commonwealth v. Chermansky*, 381 Pa.Super. 129, 133, 552 A.2d 1128 (1989). *See also Liciaga v. Court of Common Pleas*, 523 Pa. 258, 269, 566 A.2d 246, 251 (1989) (Concurring Op. of Mr. Justice Zappala stating that if a defendant is able to establish that the Commonwealth's repeated refiling of charges is an attempt to annoy or harass, the Commonwealth should not be allowed to present identical evidence before successive magistrates).

The rules of criminal procedure are silent on rearrest, and this court has spoken on the matter of rearrest only twice in plurality opinions. In *Liciaga v. Court of Common Pleas*, supra, a plurality held that where the Commonwealth has failed to present a prima facie case before a magistrate, that judgment may be reassessed before another magistrate, either by presenting the same or additional evidence. In *Commonwealth v. Kline*, 521 Pa. 281, 555 A.2d 892 (1989) a plurality held that unless there is a showing of partiality of a magis-

**2.** This court has held that "a finding by a committing magistrate that the Commonwealth failed to establish a prima facie case is not a final determination, such as an acquittal, and only entitles the accused to his liberty for the present, leaving him subject to rearrest." *Liciaga v. Court of Common Pleas*, 523 Pa. at 267, 566 A.2d at 250, citing *Commonwealth v. Genovese*, 493 Pa. 65, 425 A.2d 367 (1981).

trate, the president judge abuses his discretion by granting a request for a new magistrate.

■ Although the circumstances of this case do not implicate double jeopardy concerns, for jeopardy attaches only when a defendant is "put to trial before the trier of facts," *Liciaga,* 523 Pa. at 265, 566 A.2d at 249, there is, nonetheless, a related concern, for in double jeopardy cases and in this case the considerable power of the state is brought to bear repeatedly on an individual in an attempt to deprive him of liberty.

■ The issue here is whether the Superior Court applied the proper standard of review of the trial court's denial of the Rule 23(b) motion. As stated earlier, rule 23(b) provides that the president judge may temporarily reassign an issuing authority "to insure fair and impartial proceedings." Of course, fairness and impartiality considerations, where relevant, also include due process considerations. Thus, the trial court must consider not only the fairness and impartiality of the magistrate, but also the conduct of the Commonwealth in bringing its case. Such considerations, we now hold, are to be conducted in the sound discretion of the trial court.[3]

■ In the case at bar, the magistrate concluded that a prima facie case had not been presented. Our independent review of the record before the magistrate confirms that the Commonwealth failed to present a prima facie case and that the magistrate was not biased in making this determination. The trial court, therefore, did not abuse its discretion with respect to the magistrate's impartiality.

Next, we must consider whether there are due process considerations, such as the Commonwealth's conduct, which would either require or preclude the reassignment of an issuing authority notwithstanding the magistrate's impartiality.[4]

**3.** Six of the seven justices participating in the decision of *Commonwealth v. Kline,* 521 Pa. 281, 555 A.2d 892 (1989) treat the appropriate standard of review as abuse of discretion.

**4.** As will be noted infra, even if the magistrate fairly and impartially dismissed the Commonwealth's case, the facts of the prosecution may

██ As a general rule, the Commonwealth must be free to present its case again even after it has failed to convince a neutral magistrate that it has a prima facie case. In *Liciaga* the plurality stated:

The public interest in the safety of our citizens requires that a good faith, albeit premature response to criminal conduct, permits the state to call to task those who would violate our laws and threaten the security of our citizens and their possessions. Therefore, if the Commonwealth is unsuccessful in its first attempt to establish a prima facie case, it is not precluded from gathering more evidence to demonstrate that a crime has been committed and that the defendant has probably participated in that conduct.

523 Pa. at 265, 566 A.2d at 249. On the other hand, if the Commonwealth's conduct intrudes unreasonably upon the due process right of individuals to be free from governmental coercion, the Commonwealth should not be permitted to present the case repeatedly before successive magistrates. In its review, therefore, the appellate court must consider whether the trial court abused its discretion in balancing the need of the Commonwealth to re-present its case against the due process requirement that individuals shall be free of unreasonable and unnecessary government coercion.

In this case, the Commonwealth arrested the defendant three times over a period of nearly two years, imprisoned him for five months, was unprepared to proceed at the time of at least five preliminary hearings, and when it finally did proceed, failed to present a prima facie case. It now seeks to arrest the defendant a fourth time and to present its case again, this time to a different magistrate. Such government conduct amounts to overreaching and is antithetical to a free society. The Commonwealth's conduct, as a matter of law,

require either that the trial court grant or deny the Commonwealth's rule 23(b) motion. Where the Commonwealth acts in good faith and has made every reasonable effort to bring its case, but has, for some reason, failed to present or to obtain the evidence it is now prepared to present, the trial court should grant the motion. Where the Commonwealth has not acted in good faith, however, the trial court should deny the Commonwealth's rule 23(b) motion.

constitutes impermissible harassment. Not only was the trial court correct in refusing to grant the Commonwealth's motion to reassign an issuing authority, but it would have abused its discretion if it had granted the motion.

The order of the Superior Court is reversed.

CASTILLE, J., files a dissenting opinion.

CASTILLE, Justice, dissenting.

I must respectfully dissent. As a majority of this Court recognizes, the Commonwealth must be free to proceed against a criminally charged defendant even after it has failed to convince a neutral magistrate that it has a *prima facie* case so long as such further proceedings are not taken to harass the suspect and are undertaken in good faith. Nevertheless, the Court now holds that in this case the Commonwealth should not be allowed to proceed with criminal charges against appellant. To fully appreciate why the Commonwealth *should* be allowed to proceed against appellant under the circumstances of this case, a review of the full record is necessary.[1]

The affidavit supporting the Commonwealth's case reveals that in the early morning hours of January 21, 1993, police met with a person who had observed a robbery that had occurred on January 18, 1993. The witness told police that he observed a pizza delivery person attempting to deliver a pizza at which time a black male wearing a blue zippered sweat shirt with a hood with his face partially covered by a dark colored bandanna confronted the victim. The assailant had in his possession some type of weapon concealed by a brown paper bag which he used to confront the victim. The delivery person turned over his money and pizza to the armed assailant. The witness identified the assailant by name to police, that person being appellant. The witness further told police that appellant had informed him that appellant intended to rob

1. The record fails to reveal why the Commonwealth was not prepared to proceed at each of the listings. Presumably, no record was made in this regard since the Commonwealth believed it could always rearrest appellant under the existing law, notwithstanding the reasons for the continuances.

two stores or snatch some purses in the near future. Police asked the witness to call them immediately if he learned the location of the stores appellant intended to rob.

Later that same day, the same witness called police sometime after 10:00 p.m. to alert them that appellant had informed him that he was on his way to rob a particular delicatessen in Chester County, Pennsylvania. The same witness further informed the police that appellant had taken the witness's dark knit cap and scarf to use in the robbery.

On January 21, 1993, at approximately 10:43 p.m., an armed robbery was indeed reported at the very same Chester County delicatessen the witness had discussed with police. Police were dispatched to the crime scene and were informed that the suspect was a black male, 5'8'' tall, medium complexion, and wearing a tan waist-length coat, dark colored knit cap, and scarf around his face. The male was also reported as being armed and that he concealed his weapon in a brown paper bag. He was further reported as having fled in a white Plymouth Horizon. Approximately seven minutes later, police, acting on this information, stopped a vehicle matching the description. In plain view, officers observed a blue knit cap, a checkered scarf, a brown paper bag and money partially protruding from under the passenger seat where appellant was sitting. Police also found a hammer under the passenger seat. Both appellant and the driver of the vehicle were arrested. The witness to the pizza delivery robbery later identified the cap and scarf found in appellant's getaway car as the ones he gave appellant prior to the robbery.

At the preliminary hearing on November 28, 1994, the Commonwealth presented the testimony of the driver, the delicatessen worker who was robbed, the delicatessen owner and the officer and the detective involved in appellant's arrest.

The driver testified that on January 21, 1993, appellant had asked him to drive him to his girlfriend's house in Parkesburg, Pennsylvania and that, for an agreed upon fee, he agreed. On the way, the driver testified that appellant asked him to stop near the delicatessen in question and that before exiting the

car to enter the delicatessen, appellant had stated that if it "looks good, he's going to take it." The driver further testified that shortly after appellant returned to the car, he saw currency between the seats and that when the police signalled him to pull the car over, appellant urged him to speed up the car and flee.

The delicatessen employee testified that, although she could not identify the person who robbed her because the person wore a knit cap and scarf over his face, she could tell he was a black male. She further testified that while holding what appeared to her to be a gun in a brown paper bag, the robber said, "Give me the money. Hurry up. Give me the money." Fearing for her life, she gave him money from the store's cash register.

The owner testified that he was in the rear of the delicatessen and that after he heard the employee scream, he emerged from the rear of the store, learned what had transpired and called the police. The owner determined that approximately $574.00 had been stolen in the robbery. The officer and detective testified that appellant and the co-defendant driver were stopped within minutes approximately six miles from the store and that currency, a knit cap, hammer, scarf and assorted other items had been found in the car.[2]

After these witnesses' testimony, District Justice Brenda Bicking stated that the driver was the worst witness she had ever seen and she inexplicably dismissed the case with prejudice. The Commonwealth sought once again to proceed against appellant for a fourth time. This decision was based upon the Commonwealth's contention that the co-defendant driver had not fully revealed all relevant evidence during his preliminary hearing testimony but that after consulting with his attorney, he was willing to provide additional information to assist the Commonwealth in making a *prima facie* case against appellant. Accordingly, the Commonwealth is not attempting to proceed against appellant yet another time with the "same" evidence. Rather, as a result of the co-defendant's

---

**2.** Neither witness was able to testify regarding the amount of food.

consultation with his own attorney, the co-defendant was willing to fully cooperate with the prosecutor and to provide new evidence against appellant.

The parties readily acknowledge that there is no authority expressly limiting the number of times the Commonwealth may rearrest a person for the same criminal episode. Rather, the only prohibition appears to be that the Commonwealth may not continue to rearrest a person and pursue the same charges if such action is undertaken simply to harass the accused or is undertaken in bad faith. As I believe that the Commonwealth now has access to new evidence, albeit from an existing witness who previously testified, and that there is no evidence that the felony charges are being pursued simply to harass appellant, I would affirm the Superior Court's holding. I would further add that even if an abuse of discretion standard applied, I would find that the trial court abused its discretion in this case by not allowing the Commonwealth to proceed under the circumstances of this case.