# Commonwealth v. Perez

*Jason R. Waterloo,* for Commonwealth.
*William R. Bernhart,* for defendant.

YATRON, *J.,* July 30, 2009—This matter is before us on defendant's omnibus pretrial motion seeking dismissal of the charge against him. Hearing was originally scheduled for March 18, 2009. Due to the unusual procedural nature of the case, the Commonwealth requested additional time to investigate the facts and circumstances of the defendant's multiple arrests.

Hearing was rescheduled for May 12, 2009. We heard testimony from Officer Nicholas Hine of the Cumru Township Police Department. Additionally, three exhibits were offered by the Commonwealth. Two of the exhibits designated exhibits 2 and 3 were admitted. Exhibit 1 which consisted of hearsay, double hearsay, triple hearsay, and quadruple hearsay, all contained within a single letter, was not admitted. The defendant offered one exhibit, designated defense exhibit 1, which was also admitted into evidence.

On June 5, 2009, we determined it was necessary to review the notes of testimony prior to adjudicating defendant's motion. Accordingly, we ordered the transcription of the notes on that date, and they were lodged on June 12, 2009. Thus, the matter is now ripe for disposition.

The narrative that follows constitutes our findings of fact and conclusions of law in disposition of defendant's motion.

## STATEMENT OF THE CASE

On July 6, 2007, Officer Nicholas Hine of the Cumru Township Police Department was on duty. Two days earlier, he received information from an unnamed person to the effect that the defendant drove a blue Jeep Liberty automobile and that defendant Perez "does give false information to police to protect his identity . . . ." The record is devoid of any information as to the identity of the "complainant," whether he or she had previously provided information to the police, or the accuracy of any such information.

Hine staked out what he believed to be defendant's residence on the morning of July 6 and observed him entering the blue Jeep Liberty automobile. He followed the defendant, who subsequently pulled into the Sunoco A-Plus Mini-Mart located at the intersection of Routes 625 and 724. The defendant exited the Jeep and entered the store, and Hine parked the patrol vehicle next to the defendant's vehicle.

Prior to that morning Hine had retrieved from the information system known as JNET, copies of a photograph and biographical information on the defendant, which included his name and date of birth. This information is contained in Commonwealth exhibit 2. He determined that the individual in the photograph and the individual who entered the A-Plus store were one and the same.

When the defendant exited the store, Hine approached him, and identified himself as a police officer and told the defendant that he was conducting an investigation of Sergio Perez.

He then asked the defendant if he was Sergio Perez, and whether he was in the possession of any form of identification. The defendant responded that he was not Sergio Perez and that he did not carry identification.

When asked his name, the defendant identified himself as Almando Perez and gave a date of birth which was inconsistent with what Hine believed to be the defendant's actual date of birth.

Hine then advised the defendant that he was not free to leave, because Hine was conducting an investigation. Hine then communicated with the dispatcher and requested information regarding Almando Perez.

Hine advised defendant that if he gave false identification information that he could he charged with a criminal offense. The defendant continued to assert that he was Almando Perez.

At that point in time, Officer Hine and Sergeant Griffith, who was also present at the scene, showed the defendant the documents they had obtained from JNET containing defendant's photograph and biographical information. The defendant did not respond to being shown the information, other than to "put his head down." Hine proceeded to arrest the defendant and ultimately charged him in a single count criminal complaint with a violation of 18 Pa.C.S. §4914(a), false identification to law enforcement authorities.[1] A search incident to the

---

1. During his testimony, Hine made reference to the status of the defendant's driver's license, to which an objection was sustained. The documents provided by the Commonwealth and admitted as exhibits 2 and 3 do not substantiate any contention that the defendant's license was under suspension.

arrest revealed defendant's I.D. card, a copy of which was designated Commonwealth exhibit 3.

No other charge was lodged against the defendant. The only "investigation" that appears of record seems to be an investigation into whether the defendant would provide false information if asked to identify himself.

When the initial case reached the court of common pleas, it was dismissed by the Honorable Thomas G. Parisi on the basis that the affidavit of probable cause accompanying the original criminal complaint was neither sworn to by Hine nor executed by the magisterial district judge.

On March 27, 2008, three days after Judge Parisi dismissed the original complaint, Hine refiled the complaint alleging the same offense. Preliminary hearing was set for August 11, 2008. On the date set for preliminary hearing, Hine failed to appear and the case was dismissed a second time, by the magisterial district judge.

At the May 12 hearing, the Commonwealth proffered an exhibit which was apparently intended to explain Hine's failure to appear. The exhibit, designated Commonwealth exhibit 1 at the hearing while identified, was not admitted into evidence. Additionally, it is clear from the face of the exhibit that it contains no competent evidence explaining Hine's failure to appear; information in the exhibit constitutes hearsay, double hearsay, triple hearsay, and quadruple hearsay. Most tellingly, Hine, during his testimony, offered no explanation whatsoever for his failure to appear on August 11, 2008.

On September 25, 2008, a third identical complaint was filed by Officer Hine which was bound over to this

court and is now the subject of these proceedings. The defendant's omnibus pretrial motion seeks dismissal of the case based on violations of Pa.R.Crim.P. 130-133 and Rule 544(B),[2] suppression of evidence seized from the defendant and the statements made by him at the time of his arrest, and dismissal based on the authority of *Commonwealth v. Thorpe,* 549 Pa. 343, 701 A.2d 488 (1997).

## CONCLUSIONS OF LAW

### A. *The Application of* Commonwealth v. Thorpe, *549 Pa. 343, 701 A.2d 488 (1997)*

In *Thorpe,* the defendant was initially arrested and charged with robbery, conspiracy and related offenses. *Commonwealth v. Thorpe,* 549 Pa. 343, 701 A.2d 488 (1997). However, the Commonwealth was unable to proceed at several preliminary hearings and the charges were dismissed and the defendant was released after having spent two months in jail. *Id.* at 345, 701 A.2d at 489. Seven months later the Commonwealth reinstituted the charges and rearrested the defendant. The Commonwealth was again unable to proceed after four aborted preliminary hearings and the charges were dismissed. *Id.* As a result, the defendant was forced to spend an additional three months in jail. *Id.* The charges were re-filed a third time. *Id.* A preliminary hearing was finally held,

---

2. The defendant's motion cites Rule 554(B) for authority; however, after reviewing the Pa.R.Crim.P. we believe that this is a typo and that the defendant intended to raise Pa.R.Crim.P. 544(B) which is relevant to these proceedings.

at which time the district justice dismissed the case with prejudice because the Commonwealth had failed to present prima facie evidence supporting the arrest on the charges. *Id.* As a result, the Commonwealth filed a motion requesting the temporary assignment of a new magistrate to preside over a new preliminary hearing. *Id.* The trial court initially granted the Commonwealth's request, but then reversed itself after a subsequent hearing on the issue. *Id.* The Commonwealth appealed.

In its opinion, the Supreme Court noted that in order for the Commonwealth to successfully enforce the law it must be given the opportunity to perform additional investigation and gather additional evidence to reassert a prima facie case even after a case has already been dismissed at the preliminary hearing. *Thorpe,* 549 Pa. at 347, 701 A.2d at 490. However, the court also recognized that an individual's right to due process protects one from "unnecessary and unreasonable government coercion." *Id.* Therefore, when determining whether to award the Commonwealth a new preliminary hearing, a court must balance a person's due process rights against the Commonwealth's need to re-present its case. *Id.* After applying this test in *Thorpe,* the Supreme Court held that the Commonwealth's actions constituted impermissible harassment and clearly violated the defendant's due process rights. Based on this finding, the Supreme Court affirmed the trial court's dismissal of the charges. *Id.*

After reviewing *Thorpe,* we do not believe that the facts of this case justify dismissal of the charges. In *Thorpe,* the defendant was arrested on three separate occasions, jailed for a total of five months, subjected to five abortive preliminary hearings owing to the Com-

monwealth's failure to go forward, and the Commonwealth ultimately failed to carry its burden at the preliminary hearing. Whereas, in this case, the Commonwealth did ultimately prove a prima facie case, and the charges were bound over for trial. Furthermore, while the defendant in the instant matter was subjected to three preliminary hearings, only one of these—the second, resulted in dismissal. While this court is not pleased with the Commonwealth's handling of this case, we do not believe that the inconvenience experienced by the defendant justifies a dismissal of his charges.

### B. *Dismissal of the Charges Based Upon a Violation of Pa.R.Crim.P. 544(B)*

The defendant also asks us to dismiss the charges because the Commonwealth violated Pa.R.Crim.P. 544(B) as well as other related procedural rules. At the suppression hearing the Commonwealth conceded that it had violated these rules. (N.T., 5.12.09, p. 4.) However, after reviewing this issue, we are compelled to recognize that the relief requested is not supported by the text of these rules or any pertinent case law. Therefore, we are powerless to dismiss the charges on this basis.

### C. *The Defendant's Motion To Suppress*

Lastly, the defendant asks us to suppress all evidence in this case because the police illegally stopped and detained the defendant in this matter. After reviewing the testimony, we hold that the police action in this case was absolutely unreasonable and violated the defendant's

constitutional rights. First, we hold the police illegally detained the defendant without the necessary reasonable suspicion to believe that he was engaged in any criminal activity. Also, we hold that Officer Hine acted beyond the scope of the authority granted to him under the law. Accordingly, we grant the defendant's motion to suppress evidence.

"Both the Fourth Amendment of the United States Constitution and Article I Section 8 of the Pennsylvania Constitution protect citizens from *unreasonable* searches and seizures." *Commonwealth v. Key,* 789 A.2d 282, 287 (Pa. Super. 2001). (emphasis added) As a result, "[w]arrantless searches and seizures are . . . unreasonable per se, unless conducted pursuant to a specifically established and well-delineated exception to the warrant requirement." *Id.* "To secure the right of citizens to be free from such intrusions, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interaction with citizens as those interactions become more intrusive." *Key,* 789 A.2d at 288. Accordingly, our courts recognize three categories of police-citizen contact—a mere encounter, an investigatory detention and an arrest, which are aptly described by the court in *Commonwealth v. Jones* when it stated:

"A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond.

"In contrast, an investigative detention, by implication, carries an official compulsion to stop and respond, but

the detention is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest. Since this interaction has elements of official compulsion it requires reasonable suspicion of unlawful activity. In further contrast, a custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest." 874 A.2d 108, 116 (Pa. Super. 2005).

When analyzing whether a police-citizen contact "rises to the level of an investigative detention . . . the court must examine all the circumstances and determine whether police action would have made a reasonable person believe he was not free to go and was subject to the officer's orders." *Id.* Because an investigative detention constitutes a seizure, it implicates the protections of the Fourth Amendment and Article I Section 8 of the Pennsylvania Constitution, and must be supported by a finding of reasonable suspicion. See *id.*

"Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of intrusion warrant a man of reasonable caution in the belief that the action taken was appropriate." *Jones,* 874 A.2d at 116.

The actions of Officer Hine in this instance are clearly unreasonable. To begin, the officer received an anonymous tip that was neither corroborated nor verified.[3] This tip alleged that the defendant, if questioned, would lie about his identity to police officers, thus committing the crime of false identification to law enforcement authorities. 18 Pa.C.S. §4914(a). At this point, it is important to highlight the fact that the very nature of this statute means that a crime is not committed until a person, who is under investigation by the police for a criminal act and is told so, provides false identity to the police. Consequently, at the time the officer received the anonymous tip, no crime had yet been committed nor was there evidence that criminal activity was afoot. In fact, the only possible commission of this crime hinged upon the initial actions of the officer.

Nevertheless, Officer Hine was determined to follow this unverified lead. In doing so, he printed out a copy of the defendant's picture and got his name. He then staked out the defendant's house and followed him as he drove to a local gas station. Once there, the officer testified that:

---

3. "[I]f police receive unverified information from an unknown person, which consists solely of a generalized description of a person allegedly engaged in criminal activity at a particular location, that information, in and of itself, does not provide the police with the requisite reasonable suspicion to detain and search an individual who merely happens to be at the specified location and who matches the general description given by the informant. Some other independent corroboration of the individual's involvement in criminal activity is required. Mere *presence alone* of an individual at a particular place, as described by the anonymous informant, does not establish that the individual is engaged in criminal activity." See *Commonwealth v.*

"Officer Hine: As [the defendant] was walking towards his vehicle I approached him, identified myself as Officer Nicholas Hine Sr., Cumru Township Police Department, and that I was conducting an *investigation* with an individual named Sergio Perez." (N.T., 5.12.09, p. 11.)[4] (emphasis added)

This situation is analogous to that found in *Commonwealth v. Key,* 789 A.2d 282 (Pa. Super. 2001). In *Key,* the police were approaching people in a "high crime area" of Reading, Pa. to learn what they were doing there. *Key,* 789 A.2d at 286. During one specific interaction, the police approached two males who were speaking with one another. The officers told the defendant that because it is a "high drug area" they were stopping people to see what they were doing. *Id.* An officer on the scene asked if the defendant was in possession of any drugs or drug paraphernalia. *Id.* The defendant said he was not, and consented to being patted down to confirm his denial. *Id.* During the pat down, the officer discovered a small amount of heroine and placed the defendant under arrest. *Id.*

The defendant moved to suppress the evidence as the fruit of an illegal search. In response, Commonwealth argued that the interaction was a mere encounter and that the defendant consented to the pat down. The Superior Court held that the actions of the police officers:

---

4. To the extent that the Commonwealth would classify the stopping of the defendant as a mere encounter, such does not require any response from a citizen, and thus cannot be the proper subject of a charge under this section.

"[W]ould tend to lead any reasonable person to believe that he or she was the express target of a police investigation into criminal activity and, as such, to feel that his or her liberty was being restrained as a result of the investigation. Thus, the [defendant in this case] was subject to an investigative detention by [the police]." *Id.* at 289.

Furthermore, the police had no reasonable suspicion to believe that the defendant, who was merely seen in a high drug area, was involved in criminal activity. *Id.* Consequently, the Superior Court ruled that the police violated the defendant's constitutional rights and suppressed the evidence.

In this case, Officer Hine testified that he approached the defendant, identified himself as a police officer, and explicitly told the defendant that he was the subject of an investigation. Consistent with the holding in *Key,* a reasonable person would not feel free to leave once the police inform them that they are under investigation. Therefore, there can be no question that this interaction must be characterized as an investigative detention, which must be supported by reasonable suspicion that criminal activity is afoot. See *Jones, supra.*

As already noted above, Officer Hine merely had an unconfirmed tip that the defendant may give false information if baited to do so by the officer. No other information was provided that tended to show that the defendant was involved in any criminal activity. Therefore, the officer lacked the reasonable suspicion necessary to detain the defendant. In fact, we note that had the officer taken no action, this crime would never have been committed.

Therefore, the officer violated the defendant's constitutional rights and all evidence obtained must be suppressed as fruits of an illegal search and seizure. See *Commonwealth v. Myers,* 728 A.2d 960, 964 (Pa. Super. 1999) (citing *Wong Sun v. United States,* 371 U.S. 471 (1963)).

The officer also exceeded the scope of his authority allowed to him under the law. The applicable statute in this case reads as follows:

"(a) offense defined.—A person commits an offense if he furnishes law enforcement authorities with false information about his identity after being informed by a law enforcement officer who is in uniform or who has identified himself as a law enforcement officer that *the person is the subject of an official investigation of a violation of law.*" False identification to law enforcement authorities, 18 Pa.C.S. §4914(a). (emphasis added)

This statute requires the police to inform an individual that they are the subject of an official investigation of a violation of law before an infraction can be committed. We believe a logical reading of this statute, pursuant to the Statutory Construction Act, 1 Pa.C.S. §1921(a), requires that an actual investigation be underway when a person is approached by the police. Any other reading creates an absurd result which would allow the police to approach anyone of their choosing, lie regarding the existence of an investigation and trap an otherwise innocent person into violating this statute. We do not believe that the legislature contemplated a law that gives the police unfettered discretion and allows them to lie in order to catch an individual providing false identification.

See *Malt Beverages Dist. Ass'n v. Pa. Liquor Control Board,* 974 A.2d 1144 (Pa. 2009) ("[I]n ascertaining legislative intent, the Statutory Construction Act 'requires a presumption that the General Assembly did not intend a result that is *absurd* or unreasonable.'").

This conclusion is also supported by the Pennsylvania Supreme Court's decision in *Commonwealth v. Ickes,* 582 Pa. 561, 873 A.2d 698 (2005). In this case, game officers approached the defendant and asked him to produce identification. He refused. The officers then cited the defendant for violating 34 Pa.C.S. §904, "which requires a person to produce identification upon demand of a game officer." *Id.* at 564, 873 A.2d at 700. The court, relying on the recent United States Supreme Court's decision of *Hiibel v. Sixth Judicial Dist. of Neveda, Humboldt County,* 542 U.S. 177 (2004), recognized that the state can pass a law requiring the subject of an investigation to identify himself or herself to the police, so long as the police have detained that person pursuant to a valid investigative detention. *Ickes,* 582 Pa. at 565, 873 A.2d at 701. The court went on to note that section 904 allowed the game officers to demand identification without reason, which infringed "upon a citizen's right to be free from [the] demands of law enforcement officials who have no articulable suspicion of wrongdoing by the citizen whatsoever." *Id.* at 568, 873 A.2d at 702. Thus, the court held section 904 to be invalid because it was vague and overbroad on its face.

Based on the above, in order for section 4914(a) to comply with our law, an actual ongoing investigation into a criminal violation, and a valid investigatory detention are required before a police officer can charge an

individual under this statute. Because we have determined that there was neither an actual investigation into a criminal offense nor a valid investigative detention in this case, the defendant cannot properly be charged under section 4914(a) of this statute.

In closing, we feel compelled to highlight the unreasonableness and unfairness of the police action in this case. The police essentially baited the defendant into committing this crime, even though there was no articulable reason to do so. When dealing with such situations, our courts have censured such action.

For example, in *Commonwealth v. Spennato,* 318 Pa. Super. 532, 465 A.2d 681 (1983), the Superior Court admonished the Commonwealth for setting what has now become known as a "perjury trap". In *Spennato,* the Pennsylvania Crime Commission was questioning the defendant under oath. The majority of the Commonwealth's questions focused on the defendant's handling of his business accounts as the manager and proprietor of a pizza shop. However, in the middle of the proceeding the Commonwealth asked a single ambiguous question about whether he had ever made deposits into a bank account other than his own. He answered in the negative, reasonably believing that they were still questioning him regarding the business transactions. The Commonwealth subsequently charged the defendant with perjury after they uncovered evidence that he had made several personal deposits into the bank accounts of two other individuals. On review, the Superior Court vacated the defendant's sentence, and held that:

"The interrogation tactic of the Crime Commission investigator reeks of unfairness in that it deprived the appellant of any opportunity to be apprised of the impact of the question; a question so patently ambiguous that to allow it to serve as the basis for a perjury prosecution is contrary to all notions of fairness and justice." *Id.* at 537, 465 A.2d at 684.

Much like in *Spennato,* the police in this case manufactured a situation which baited the defendant, by the mere utterance of several words, to commit this crime. A crime that would have never been committed had the police not acted. Acceptance of this conduct is tantamount to giving the police unfettered discretion to challenge anyone that simply annoys or offends them, regardless of whether that person is actually involved in any type of criminal activity. See *Ickes,* 582 Pa. at 566-67, 873 A.2d at 702. Such a result is an anathema to our Fourth Amendment jurisprudence which protects people from unreasonable searches and seizures. Moreover, it clearly violates our societal expectations of fairness and justice. For these reasons, the actions of the police in this matter, as revealed in the record, require the suppression of all statements and evidence obtained by Officer Hine at the Sunoco A-Plus Mini-Mart.