COMMONWEALTH of Pennsylvania,
Appellant

v.

Richard D. CARBO, Appellee.

Superior Court of Pennsylvania.

Argued Sept. 5, 2002.
Filed April 11, 2003.

Mary M. Killinger, Asst. Dist. Atty., Norristown, for Com., appellant.

Thomas P. Rogers, Norristown, for appellee.

Before: McEWEN, P.J.E., JOHNSON, HUDOCK, FORD ELLIOTT, JOYCE, ORIE MELVIN, TODD, KLEIN and BOWES, JJ.

JOYCE, J.

¶ 1 The Commonwealth of Pennsylvania appeals from the March 1, 2001 order of the Court of Common Pleas of Montgomery County granting the petition for writ of *habeas corpus* filed by Appellee, Richard D. Carbo. Upon review, we reverse and remand for proceedings consistent with this Opinion. The relevant facts and procedural history are as follows.

¶ 2 On August 21, 2000, Appellee was arrested and charged with theft by extortion, receiving stolen property, threats and other improper influence in official and political matters, official oppression, and criminal attempt at theft by extortion.[1] According to the affidavits of probable cause, each of these charges stemmed

1. 18 Pa.C.S.A. §§ 3923(a)(4), 3925(a), 4702(a)(3), 5301(2) and 901(a), respectively.

from Appellee's efforts to utilize his position as a retired Plymouth police officer, and as Chairman of the Plymouth Township Council, to extort a larger disability payment from the Plymouth Township Police Association ("Association"). The criminal complaint avers that Appellee routinely pressured the Association's president, Lieutenant John Myrsiades, to pay him more than the standard $350.00 per month provided to other retired and disabled officers. When Lieutenant Myrsiades refused to increase his payments, Appellee allegedly threatened to use his position as Chairman of the Plymouth Township Council to sabotage the police department's upcoming contract negotiations with the Township. In light of these threats, Lieutenant Myrsiades informed two other members of the Association, Detective Mark Lacy and Lieutenant Michael Haig, of Appellee's demands. Thereafter, the Association increased Appellee's disability payments to $525.00 per month.

¶ 3 Prior to filing the charges against Appellee, Detective Michael Gilbert of the Montgomery County Detective Bureau independently interviewed Lieutenant Myrsiades, Lieutenant Haig and Detective Lacy. Lieutenant Myrsiades informed Detective Gilbert that Appellee had threatened to sabotage the police contract if he did not receive additional disability benefits. Additionally, Lieutenant Haig and Detective Lacy stated that Lieutenant Myrsiades had informed them of Appellee's threats.

¶ 4 A preliminary hearing was held on the charges on October 4, 2000. At this hearing, the Commonwealth sought to rely upon the testimony of Lieutenant Myrsiades. During the course of his testimony, however, Lieutenant Myrsiades re-

nounced his previous statements to police and indicated that Appellee never made an improper request for increased compensation. As a result of this contradictory testimony, District Justice Walter F. Gadzicki determined that the Commonwealth had failed to establish a *prima facie* case on the charges of theft by extortion, receiving stolen property and attempted theft by extortion. Nonetheless, District Justice Gadzicki held the improper influence and official oppression charges for court.[2]

¶ 5 On November 1, 2000, Appellee filed a petition for writ of *habeas corpus* on these remaining charges, and a hearing was held at the Court of Common Pleas of Montgomery County on November 20, 2000. At the conclusion of this hearing, the Commonwealth withdrew its opposition to Appellee's petition, and the Honorable William W. Vogel dismissed the remaining charges against Appellee on December 21, 2000.

¶ 6 On January 16, 2001, the Commonwealth refiled the original charges against Appellee. In doing so, the Commonwealth submitted the identical criminal complaint and affidavit of probable cause that it had filed on August 21, 2000. Before a second preliminary hearing was scheduled on these charges, Appellee filed his second petition for writ of *habeas corpus*. In support of his petition, Appellee asserted that the Commonwealth could not refile charges against him absent any new evidence. The Commonwealth filed a response to this petition, in which it asserted that it intended to call additional witnesses to establish its case, including Lieutenant Haig and Detective Lacy.

---

**2.** Our review of the record indicates that the Commonwealth did not file a criminal infor-

mation on these two charges.

¶ 7 On February 2, 2001, the Honorable Maurino J. Rossanese Jr. held a hearing on Appellee's *habeas corpus* petition. At the hearing, Appellee's counsel argued that our Court's decision in *Commonwealth v. Moore*, 749 A.2d 505 (Pa.Super.2000) precluded the Commonwealth from refiling charges in the absence of new evidence that was not available or discoverable before the first preliminary hearing. Additionally, Appellee argued that the testimony of Detective Lacy and Lieutenant Haig did not constitute newly discovered evidence because the Commonwealth had interviewed Detective Lacy and Lieutenant Haig prior to the first preliminary hearing. After reviewing our Court's decision in *Moore*, the trial court agreed with Appellee and dismissed the charges with prejudice on March 1, 2001. *See* Findings of Fact and Conclusions of Law, 3/1/01 at 5. This timely appeal followed.

¶ 8 In this appeal, the Commonwealth argues that the trial court erred in granting Appellee's *habeas corpus* petition. Specifically, the Commonwealth contends that Rule 544 of the Pennsylvania Rules of Criminal Procedure (formerly Pa. R.Crim.P. 143) and prevailing case law permits the Commonwealth to refile criminal charges as long as this action does not prejudice the defendant. As our Court's decision in *Moore* appears to create an additional requirement, that the Commonwealth must introduce "new evidence" that was previously unavailable or undiscoverable in order to refile charges, the Commonwealth maintains that *Moore* conflicts with existing law and must be overruled.

¶ 9 When reviewing a trial court's decision to grant a *habeas corpus* petition, we will not reverse the trial court's decision absent a manifest abuse of discretion. *Commonwealth v. Kohlie*, 2002 PA Super 325, ¶ 9, 811 A.2d 1010. In order to constitute an abuse of discretion, the record must disclose that the trial court exercised manifestly unreasonable judgment or based its decision on ill will, bias or prejudice. *Commonwealth v. Cunningham*, 805 A.2d 566, 575 (Pa.Super.2002). Furthermore, our scope of review is limited to determining whether the Commonwealth has established a *prima facie* case. *Kohlie*, 2002 PA Super 325 at ¶ 9, 811 A.2d 1010. "In criminal matters, a *prima facie* case is that measure of evidence which, if accepted as true, would justify the conclusion that the defendant committed the offense charged." *Id.* With these standards in mind, we now turn to our discussion of the Commonwealth's sole issue, namely, whether the Commonwealth must possess newly discovered evidence in order to reinstate dismissed charges. Commonwealth's Brief, at 3. In addressing this issue, we will also determine whether our decision in *Moore* conflicts with existing law and must be overruled.

¶ 10 Preliminarily, we note that the instant appeal stems from the Commonwealth's attempt to refile five criminal charges against Appellee in the Court of Common Pleas of Montgomery County. The Commonwealth attempted to refile three of these charges, *i.e.* theft by extortion, receiving stolen property and attempted theft by extortion, after their dismissal at a preliminary hearing. The Commonwealth sought to refile the remaining two charges, *i.e.* improper influence and official oppression, after their dismissal at the first *habeas corpus* hearing. Since the Commonwealth's efforts to refile these charges arose from two procedurally distinct events, we will address them separately.

### I. Charges Dismissed After the Preliminary Hearing

¶ 11 Our Supreme Court has long recognized the Commonwealth's abili-

ty to reinstitute criminal charges when the charges are dismissed at a preliminary hearing. *See In re Riggins,* 435 Pa. 321, 323, 254 A.2d 616, 617 (1969); *Commonwealth v. Hetherington,* 460 Pa. 17, 22, 331 A.2d 205, 208 (1975); *Liciaga v. The Court of Common Pleas of Lehigh County,* 523 Pa. 258, 265, 566 A.2d 246, 249 (1989) (plurality opinion); *Commonwealth v. Thorpe,* 549 Pa. 343, 348, 701 A.2d 488, 490 (1997). On October 8, 1999, our Supreme Court even adopted Rule 544 of the Pennsylvania Rules of Criminal Procedure (formerly Rule 143) to clarify the procedure for refiling dismissed charges. Rule 544 provides as follows:

### Rule 544. Reinstituting Charges Following Withdrawal or Dismissal

(A) When charges are dismissed or withdrawn at, or prior to a preliminary hearing, the attorney for the Commonwealth may reinstitute the charges by approving, in writing, the refiling of a complaint with the issuing authority who dismissed or permitted the withdrawal of the charges.

(B) Following the refiling of a complaint pursuant to paragraph (A), if the attorney for the Commonwealth determines that the preliminary hearing should be conducted by a different issuing authority, the attorney shall file a Rule 132 motion with the clerk of courts requesting that the president judge, or a judge designated by the president judge, assign a different issuing authority to conduct the preliminary hearing. The motion shall set forth the reasons for requesting a different issuing authority.

Pa.R.Crim.P. 544. Additionally, it is well settled that a magistrate's decision to dismiss criminal charges after a preliminary hearing is unappealable. *See Hetherington,* 460 Pa. at 22, 331 A.2d at 208. Therefore, the reinstitution of charges is the only recourse available to the Commonwealth after it fails to establish a *prima facie* case at a preliminary hearing. *Id.*

¶ 12 Despite the broad language of Rule 544, we note that the Commonwealth's authority to reinstitute criminal charges is not limitless. For example, the Commonwealth must refile the charges prior to the expiration of the statute of limitations. *Thorpe,* 549 Pa. at 346, 701 A.2d at 489. Further, the Commonwealth may not reinstitute the charges in an effort to harass the defendant or where the refiling would prejudice the defendant. *Id.* at 348, 701 A.2d at 490; Pa.R.Crim.P. 544, Explanatory Comment.

¶ 13 Additionally, our courts circumscribed the evidence that may be used to support the reinstatement of criminal charges after a preliminary hearing. For instance, in *In re Riggins, supra,* the Commonwealth sought to appeal from the dismissal of a murder charge after a preliminary hearing. *Id.* at 323, 254 A.2d at 617. Upon review, our Supreme Court quashed the appeal as interlocutory and stated that the Commonwealth's only recourse was to refile the murder charge. *Id.* at 324, 254 A.2d at 618. In making this decision, the court specified that the Commonwealth could present the same evidence or additional evidence to establish its *prima facie* case at a second preliminary hearing. *Id.* Moreover, in *Liciaga, supra,* a plurality of our Supreme Court echoed the language of *Riggins* when it stated:

a determination that the Commonwealth has failed to establish a *prima facie* case does not preclude a reassessment of that judgment before another district justice either by presenting the same evidence or by presenting a case with additional evidence.

*Id.* at 258, 566 A.2d at 246.

¶ 14 Further, we note that the majority of our Court's decisions are also consistent

with our Supreme Court's decisions in *Riggins* and *Liciaga*. In *Commonwealth v. Stehley*, 350 Pa.Super. 311, 504 A.2d 854, 860 (1986), this Court upheld the decision of the trial court which permitted the Commonwealth to refile a murder charge against a defendant. In making this determination, we stated that the Commonwealth may refile charges that were dismissed after a preliminary hearing if the Commonwealth was aggrieved by this decision. *Id.* at 861. Additionally, we emphasized that "[i]n so doing, the Commonwealth **need not present additional evidence**, although it most often will." *Id.* (emphasis added).

¶ 15 In *Commonwealth v. Jones*, 429 Pa.Super. 601, 633 A.2d 185 (1993), we relied upon *Liciaga* when we determined that the Commonwealth may seek to reinstate a charge dismissed by a magistrate at a preliminary hearing. *Id.* at 188. In order to reinstate the charges, however, "the Commonwealth must either believe that its evidence was sufficient to establish a *prima facie* case or ... intend[ ] to produce *additional* evidence at the new preliminary hearing." *Id.* (emphasis in original).

¶ 16 In the instant case, the Commonwealth attempted to refile three charges that had been dismissed after a preliminary hearing for failing to establish a *prima facie* case. Upon refiling, the Commonwealth sought to establish its case against Appellee by presenting additional evidence that it had not presented at the first hearing, *i.e.*, the testimony of Detective Lacy and Lieutenant Haig. In view of the clear import of Rule 544 and the case law of this Commonwealth, we observe that the Commonwealth is entitled to an opportunity to establish a *prima facie* case with this additional evidence as long as the refiling is not calculated to harass Appellee and as long as Appellee is not prejudiced

by the refiling. *See Riggins, supra; Liciaga, supra; Stehley, supra; Jones, supra.*

¶ 17 Nevertheless, the trial court dismissed the refiled charges against Appellee on the grounds that the Commonwealth could not support its case with any new evidence that was not extant at the time of the first preliminary hearing. In support of this decision, the trial court relied upon our Court's decision in *Commonwealth v. Moore, supra.*

¶ 18 In *Moore*, the Commonwealth refiled criminal charges against Moore after a trial court dismissed the charges after a *habeas corpus* hearing. *Moore*, 749 A.2d at 505–06. Before a preliminary hearing on the refiled charges was held, Moore filed a second petition for writ of *habeas corpus. Id.* At the second *habeas corpus* hearing, the trial court dismissed the refiled charges upon its determination that the Commonwealth had failed to establish a *prima facie* case and had not produced any *newly discovered evidence* to support the charges. *Moore*, 749 A.2d at 505–06 (emphasis added). On appeal, a panel of Court stated:

> [w]e have no dispute with the Commonwealth's authority to refile criminal charges where the defect is curable by admission of "new evidence" either not available or discoverable until after a preliminary hearing held to establish a prima facie [sic] case before a District Justice resulted in dismissal.

*Id.* at 506, citing *Commonwealth v. Waller*, 453 Pa.Super. 36, 682 A.2d 1292, 1294 (1996). Since the Commonwealth could not produce any evidence that was not discoverable prior to the first hearing, the panel held that the prosecution was precluded from a "second bite at the apple to convict Moore." *Id.* at 506, citing *Hetherington, supra.*

¶ 19 Upon our reading of *Moore*, we find that the newly discovered evidence lan-

guage stands in certain conflict with the law of this Commonwealth.[3] While much of the case law has permitted, and even encouraged, the Commonwealth to present additional evidence at a second preliminary hearing, we have found no prior case that limits this additional evidence to evidence that was not available or discoverable before the charges were dismissed. Additionally, we note that *Moore*'s departure from our well-settled standards for refiling criminal charges rests upon a faulty legal foundation. Although the panel in *Moore* cites the decisions in *Waller* and *Hetherington* as support for a "newly discovered evidence" requirement, we find that neither of these cases supports this proposition.

¶ 20 In *Commonwealth v. Waller*, 453 Pa.Super. 36, 682 A.2d 1292 (1996) (*en banc*), the Commonwealth appealed the trial court's dismissal of the criminal charges against Waller. *Id.* at 1294. The trial court dismissed the charges prior to the start of trial when a critical witness for the Commonwealth did not appear at trial. *Id.* Upon our review, we determined that the Commonwealth's appeal was interlocutory. *Id.* at 1295. Specifically, we stated that "the defect leading to the dismissal of the charges against Waller was curable through refiling the complaint and subsequent production of the requested witness." *Id.*

¶ 21 Conspicuously absent from *Waller* is any expression that the Commonwealth must present newly discovered evidence in order to refile the criminal charges. In fact, the circumstances in *Waller* even

demonstrate that newly discovered evidence was not required; our Court explicitly permitted the Commonwealth to refile the charges and to produce the previously known informant at the new trial. *Id.*

¶ 22 In *Hetherington, supra*, the Commonwealth appealed from an order of the trial court that denied its petition to rearrest the defendant. *Hetherington*, 460 Pa. at 21, 331 A.2d at 207. The trial court opted to dismiss the charges when the Commonwealth stipulated that it would not present any additional evidence at a second preliminary hearing. *Id.* at 22, 331 A.2d at 208. A panel of our Court affirmed the decision of the trial court. *Id.* at 21, 331 A.2d at 207. On appeal, our Supreme Court recognized that, where the Commonwealth refiles charges, the judicial officer must make an independent determination of whether the Commonwealth can establish a *prima facie* case. *Id.* at 22, 331 A.2d at 208. However, if the Commonwealth merely indicates that it will present the same evidence that it presented at the preliminary hearing, the judicial officer may deny the petition for rearrest. *Id.* The court also noted that such a determination "does not preclude the Commonwealth from seeking a review by another judicial officer, empowered to hold preliminary hearings." *Id.* at 23, 331 A.2d at 208. Upon our reading of this case, however, we have found no explicit or implicit requirement that the Commonwealth must possess newly discovered evidence before it may refile criminal charges.

¶ 23 Apart from the inadequate foundation in *Moore*, we note that a recent deci-

---

**3.** Although our decision in *Moore* stemmed from the Commonwealth's decision to refile charges that were dismissed after a *habeas corpus* hearing, the *Moore* court specifically stated that the "newly discovered evidence" rule arose in the context of a dismissal of charges after a preliminary hearing. *Moore*, 749 A.2d at 506. The panel then sought to

extend this rule to the refiling of charges after a *habeas corpus* hearing. *Id.* ("[w]e now hold that this same rationale is applicable to the grant of a Petition for Writ of Habeas Corpus"). As such, it is necessary for us to discern whether the *Moore* court improperly stated the standard for refiling charges after a preliminary hearing.

sion of this court also demonstrates that *Moore* irreconcilably conflicts with the case law of this Commonwealth. In *Commonwealth v. Singletary*, 803 A.2d 769 (Pa.Super.2002), Singletary appealed after the trial court permitted the Commonwealth to refile criminal charges against him after the charges were dismissed at a preliminary hearing. On appeal, Singletary argued that the Commonwealth could not refile the charges unless it could produce evidence that was not available at the time of the preliminary hearing. After a consideration of the prevailing case law, our Court rejected Singletary's argument and held:

> so long as the Commonwealth re-files the charges in good faith and not to harass the defendant, the Commonwealth need not present any new evidence that was not available at the time of the first preliminary hearing in order to refile the charges.

*Id.* at 770.

¶ 24 Upon our consideration of the holdings in *Singletary* and the other relevant cases in this Commonwealth, we do not find that the newly discovered evidence standard in *Moore* is consistent with prior case law. Although previous panels of this Court have attempted to reconcile or distinguish *Moore* in an effort to enforce the well-settled "additional evidence" standard, we decline to do so. *See Commonwealth v. Medrano*, 788 A.2d 422, 429 (Pa.Super.2001) ("a careful reading of *Moore* makes clear that the presentation of new evidence is one way for the Commonwealth to refile dismissed charges"); *Singletary*, 803 A.2d at 774 ("to the extent that we also observed that the proposed additional evidence was or should not have been known to the Commonwealth at the time of the first preliminary hearing, this [language in *Moore*] was merely dictum"). Accordingly, to the extent that our decision in *Moore*

creates a requirement that the Commonwealth must possess new evidence either not available or discoverable prior to the first preliminary hearing in order to refile charges, it is overruled.

¶ 25 In view of this holding, we find that the trial court should not have denied the Commonwealth an opportunity to establish a *prima facie* case against Appellee on the three charges dismissed after the first preliminary hearing on the basis that the Commonwealth would not produce any new evidence. When charges are dismissed after a preliminary hearing, the Commonwealth may refile the charges and attempt to establish a *prima facie* case with the same evidence presented at the first hearing or with additional evidence.

## II. Charges Dismissed After the *Habeas Corpus* Hearing

█ ¶ 26 In its brief, the Commonwealth also asserts that the trial court erred when it determined that the Commonwealth must possess newly discovered evidence in order to refile the two charges that were dismissed at the *habeas corpus* hearing. Before we may address this claim of error, however, we must determine whether the Commonwealth may refile criminal charges after failing to make a *prima facie* case at a *habeas corpus* hearing.

█ ¶ 27 It is well settled in this Commonwealth that "a petition for writ of *habeas corpus* is the proper vehicle for challenging a pre-trial finding that the Commonwealth presented sufficient evidence to establish a *prima facie* case." *Kohlie*, 811 A.2d at 1013; *see Hetherington*, 460 Pa. at 23, 331 A.2d at 209; *Commonwealth v. Fountain*, 811 A.2d 24, 25 n. 1 (Pa.Super.2002); *Commonwealth v. Saunders*, 456 Pa.Super. 741, 691 A.2d 946, 948 (1997), *appeal denied*, 550 Pa. 703, 705 A.2d 1307 (1997). Although a *habeas cor-*

*pus* hearing is quite similar to a preliminary hearing, the Commonwealth does have an opportunity at the *habeas corpus* hearing to present additional evidence to demonstrate that the defendant committed the offense charged. *See Fountain,* 811 A.2d at 25; *Saunders,* 691 A.2d at 948; *Commonwealth v. Pachipko,* 450 Pa.Super. 677, 677 A.2d 1247, 1249 (1996), *appeal denied,* 546 Pa. 692, 687 A.2d 377 (1997). If the trial court determines that the Commonwealth has not established a *prima facie* case and discharges the defendant, the Commonwealth has a right to appeal the order. *See Commonwealth v. Hess,* 489 Pa. 580, 588–89, 414 A.2d 1043, 1047 (1980); *Commonwealth v. Henlen,* 522 Pa. 514, 564 A.2d 905 (1989); *Waller,* 682 A.2d at 1294; *Commonwealth v. Karlson,* 449 Pa.Super. 378, 674 A.2d 249, 250 n. 3 (1996); *Fountain,* 811 A.2d at 25 n. 1.

¶ 28 In addition to this well settled right to appeal, our Court has also held that the Commonwealth retains the ability to refile the same criminal charges in certain circumstances. In *Commonwealth v. Orlowski,* 332 Pa.Super. 600, 481 A.2d 952 (1984), the Commonwealth charged Orlowski with homicide, criminal conspiracy, criminal solicitation and other related offenses. *Id.* at 967. At the preliminary hearing, the Commonwealth presented the testimony of one witness and the stipulated testimony of a coroner. *Id.* Upon hearing the evidence, the district justice determined that the Commonwealth had established a *prima facie* case on each of the charges and held all of the charges for court. *Id.* Thereafter, Orlowski filed a Petition for Writ of *Habeas Corpus* in the Court of Common Pleas of Bucks County, asserting that the Commonwealth had not presented sufficient evidence at the preliminary hearing to establish a *prima facie* case. *Id.* Upon its review of the preliminary hearing testimony, the trial court granted Orlowski's

petition and entered an order dismissing each of the charges. *Id.*

¶ 29 On the next day, the Commonwealth refiled the same charges against Orlowski and asserted that it would present additional testimonial evidence to establish its *prima facie* case. *Id.* At the second preliminary hearing, the Commonwealth presented this additional evidence, and each of the charges were held for court. *Id.* Orlowski filed a second petition for *habeas corpus* relief asserting that his second arrest was procedurally improper. *Id.* Specifically, Orlowski asserted that the Commonwealth's ability to appeal the order granting his Petition for Writ of *Habeas Corpus* precluded it from refiling the charges. *Id.* The trial court denied this petition, and Orlowski was eventually convicted of the aforementioned offenses after a jury trial. *Id.* at 968.

¶ 30 On appeal, Orlowski questioned whether the refiling of criminal charges is a viable procedure for the Commonwealth following the grant of *habeas corpus* relief. *Id.* Upon review, our Court held that the Commonwealth retains the option to refile criminal charges where it recognizes that it has failed to establish a *prima facie* case and that an appeal from the trial court's order would be frivolous. *Id.* at 969. In so holding, our Court also directed that the Commonwealth must present additional evidence at the second preliminary hearing to bolster its case so as not to collaterally attack the previous determination of the trial court. *Id.*

¶ 31 Furthermore, our Supreme Court has stated, albeit in *dicta,* that the refiling of charges is a viable option following the trial court's decision to grant a defendant's *habeas corpus* petition. In *Commonwealth ex rel. Fitzpatrick v. Mirarchi,* 481 Pa. 385, 392 A.2d 1346 (1978), the defendant filed a Petition for Writ of *Habeas Corpus* in the Court of Common Pleas of

Philadelphia County. *Id.* at 388, 392 A.2d at 1347. At the hearing, the Commonwealth sought permission from the trial court to amend its complaint by adding an additional charge. *Id.* The trial court denied the Commonwealth's request to amend and granted the defendant's Petition for Writ of *Habeas Corpus* "on the basis that the complaint contained a substantive defect which could not be remedied by amending it." *Id.* Thereafter, the Commonwealth remedied the defect and refiled the complaint. *Id.* at 389, 392 A.2d at 1347. Although the parties did not specifically question the propriety of this procedure on appeal, our Supreme Court explicitly approved of this practice. *Id.* at 390, 392 A.2d at 1348. It stated:

> This Court has acknowledged that rearrest is the appropriate procedure and the Commonwealth's only recourse where charges are dismissed and the defendant discharged upon a finding of a lack of prima facie case since such a determination is interlocutory in nature and, therefore, not appealable. *Commonwealth v. Hetherington*, 460 Pa. 17, 331 A.2d 205 (1975). See also *Riggins Case*, 435 Pa. 321, 254 A.2d 616 (1969); *McNair's Petition*, 324 Pa. 48, 187 A. 498 (1936). Likewise, where, as here, dismissal of the charges and discharge of the defendant resulted form a determination that the complaint contained a "substantive defect", re-arrest was an appropriate, if not the only, procedure available to the Commonwealth. [FN4] Thus, the court below properly treated this matter as a "re-arrest."

FN4. *Because of defense counsel's use of a writ of habeas corpus to test probable cause to arrest before the preliminary arraignment, the Commonwealth had the option of appealing Judge Mirarchi's grant of habeas corpus to the Superior Court.* Act of May 25, 1951, P.L. 415 § 7, as amended, Act of June 3, 1971, P.L. 143, No. 6, § 1, 12 P.S. § 1907. *The*

*Commonwealth did not take an appeal, but proceeded by way of re-arrest.*

*Id.* at 390–91, 392 A.2d at 1348 (emphasis added).

¶ 32 In view of the holding in *Orlowski* and the guidance provided by our Supreme Court in *Mirarchi*, we find that the refiling of charges is a viable alternative to filing an appeal from the grant of a *habeas corpus* petition. Each of these cases illustrates that refiling and rearrest are appropriate in those instances where the Commonwealth recognizes the deficiencies in its case and seeks to correct the defect(s).

¶ 33 Nonetheless, the Dissenting Opinion concludes that our Supreme Court's decision in *Commonwealth v. Hetherington, supra,* prohibits the refiling of criminal charges, after their dismissal at a *habeas corpus* hearing, where the Commonwealth has failed to establish a *prima facie* case. Dissenting Opinion, at 77–78. We cannot agree.

¶ 34 In *Hetherington,* the Commonwealth attempted, *inter alia,* to refile four charges that were previously dismissed when the trial court granted the defendant's Petition for Writ of *Habeas Corpus.* 460 Pa. at 21, 331 A.2d at 207. The trial court refused to entertain this refiling and the Commonwealth appealed. *Id.* at 21, 331 A.2d at 207–08. Upon review, our Supreme Court agreed with the trial court and held that the Commonwealth's failure to appeal from the grant of *habeas corpus* relief barred the Commonwealth from refiling the charges. *Id.* at 23–24, 331 A.2d at 209.

¶ 35 We note, however, that *Hetherington* did not address a situation where the Commonwealth attempted to bolster its *prima facie* case with additional evidence or sought to correct a "substantive defect" in the criminal complaint. Rather, in *Hetherington,* the Supreme Court considered a situation where the Commonwealth

had stipulated, upon refiling the charges, that it would not present any additional evidence to establish a *prima facie* case. *Id.* at 22–23, 331 A.2d at 208. The Commonwealth merely sought to rely on the exact same evidence that it had presented at the previous *habeas corpus* hearing. Instead of permitting the Commonwealth to initiate a collateral attack on a prior ruling of a trial judge, the court in *Hetherington* determined that rearrest was not a viable option. *See Orlowski*, 481 A.2d at 968 (distinguishing *Hetherington* on the basis that the Commonwealth attempted to "collaterally attack" a decision of the trial court through the presentation of the same evidence). At no time in *Hetherington*, however, does our Supreme Court address the Commonwealth's ability to rearrest and refile criminal charges when the Commonwealth acknowledges the deficiencies in its case and intends to cure them by the presentation of additional evidence or otherwise.

¶ 36 We also disagree with the Dissenting Opinion's conclusion that Section 6505 of the Judicial Code precludes the Commonwealth from refiling charges after their dismissal at a *habeas corpus* hearing. *See* 42 Pa.C.S.A. § 6505. Specifically, the Dissenting Opinion, relying upon one portion of the statute, asserts that the legislature created this Section to bar rearrest because it was aware of the Commonwealth's ability to present additional evidence at the *habeas corpus* hearing and recognized that an appeal was a viable remedy. Dissenting Opinion, at 76. The Dissenting Opinion also states that the legislature's usage of the phrase, same facts and circumstances, indicated that it sought to preclude rearrest on the same evidence. *Id.* at 76.

¶ 37 Section 6505 states, in its entirety:

**§ 6505. Interference with writ prohibited**

Any person who shall fail or refuse to respond to a writ or to an order issued under this chapter, or who shall change the place of detention of any person for the purpose of defeating the writ, or shall, without express authorization from a judge of a court of record, recommit on substantially the same facts and circumstances any person set at large upon a habeas corpus, or shall do any act for the purpose of defeating the writ or the order, commits a misdemeanor of the second degree.

42 Pa.C.S.A. § 6505.

¶ 38 Initially, we note that "the paramount consideration in interpreting and construing the provisions of a statute is the intention of the legislature." *Commonwealth v. Lurie*, 524 Pa. 56, 60, 569 A.2d 329, 331 (1990). Moreover, the courts of this Commonwealth are obligated to determine and give effect to that intention. *Id.* "Every statute shall be construed, if possible, to give effect to all of its provisions." 1 Pa.C.S.A. § 1921(a); *Commonwealth v. Reefer*, 2003 PA Super 38, ¶ 16, 816 A.2d 1136. Where the intent of the legislature is clear from the plain meaning of the statute, we need not pursue statutory interpretation. *Commonwealth v. Packer*, 568 Pa. 481, 488, 798 A.2d 192, 196 (2002). It is only when the language of the statute is ambiguous that we must resort to statutory construction. *Id.*

¶ 39 Foremost, we note that no controlling decision of this Commonwealth has advanced any interpretation of Section 6505 or, more importantly, has ever utilized the language of this Section to prohibit the refiling of criminal charges after the grant of a *habeas corpus* hearing. Neither have we found any controlling case law in this Commonwealth that utilizes this statutory language to define whether the Commonwealth may refile

criminal charges with the same, additional, or new evidence. We emphasize, as well, that the Dissenting Opinion has cited no controlling authority in support of its interpretation of Section 6505.

¶ 40 A plain reading of the unambiguous language of Section 6505 reveals that the legislature intended to make an individual's "interference" with a writ of *habeas corpus*, or with an order granting a petition for *habeas corpus*, a criminal offense. Section 6505 specifically delineates that any person who refuses to respond to a writ or order, moves a prisoner to defeat the writ, recommits a prisoner after an order discharges him/her, or does any act for the purpose of defeating a writ or order commits a misdemeanor. Thus, on its face, we do not find that the legislature specifically drafted this section to address the pertinent issue in this appeal, namely, whether the Commonwealth may refile criminal charges after their dismissal at a *habeas corpus* hearing. Rather, the plain language of the statute indicates that the legislature only intended to proscribe any conduct that interferes or seeks to defeat the writ or the order discharging a prisoner.

¶ 41 The Dissenting Opinion, however, suggests that the act of refiling charges that were dismissed after a *habeas corpus* hearing may fall under the proscribed conduct.[4] Specifically, the Dissenting Opinion cites to that portion of the statute that prohibits any person from recommitting "on the same facts and circumstances any person set at large upon a habeas corpus" as support for this proposition. We cannot agree with this interpretation.

¶ 42 Upon our reading of Section 6505, we do not find that the legislature intended to proscribe those actions that are consistent with the legal process. The first two portions of the Section (*i.e.* an individual's failure or refusal to respond to the writ/order or an individual's efforts to change a prisoner's place of detention to avoid the writ) contemplate a person's bald refusal to follow the directives of a court. Additionally, the third portion of the Section (*i.e.* a recommitment based on the same facts and circumstances without express authorization from a judge) only prohibits the rearrest of a defendant where one did not obtain previous court approval.

¶ 43 It is the fourth portion of this Section, however, that provides conclusive support for the interpretation that Section 6505 does not apply to those acts which are consistent with the legal process. This portion prohibits any person from committing "any act for the purpose of defeating the writ or the order." To read this portion as the Dissenting Opinion suggests, this broad language would even proscribe the Commonwealth's time honored ability to file an appeal granting a *habeas corpus* petition. It is axiomatic that the entire purpose of an appeal from the trial court's decision to dismiss the charges is to **defeat** the underlying order and to bring the defendant to trial. Further, if we were to adopt the dissent's interpretation, we would have to conclude that the courts of this Commonwealth have sanctioned the commission of a crime each time they have heard such an appeal. This we will not do. In view of these considerations, we conclude that the legislature enacted this Section to proscribe the conduct of any person who interferes with an individual's liberty outside the color of law.[5]

---

4. In making this assertion, the Dissenting Opinion implies that the agents of this Commonwealth that refiled the criminal complaint and the district justice who signed the second arrest warrant are guilty of a misdemeanor.

5. Although we find that the language of this statute is clear and unambiguous, and that we

¶ 44 Absent any controlling case law or statutory provision to the contrary, we find that the refiling of charges and the rearrest of a defendant are viable procedures in this Commonwealth where the Commonwealth recognizes the propriety of the trial court's dismissal of the charges and seeks to cure these defects. *See Orlowski, supra; Mirarchi, supra.*

¶ 45 Having made this threshold determination, we must also determine whether the instant trial court properly determined that the Commonwealth must possess newly discovered evidence in order to refile criminal charges that were dismissed at a *habeas corpus* hearing. We note, at the outset, that our decision in *Orlowski* provides us with guidance on this issue. In that case, we stated that the Commonwealth may not refile charges, that were dismissed after a *habeas corpus* hearing, on the same evidence. *Id.* at 967. To hold otherwise would permit the Commonwealth to collaterally attack a previous decision of a trial judge on the same record. *Id.* However, we did hold that the Commonwealth may refile criminal charges against the defendant where the Commonwealth intended to produce additional evidence to support a *prima facie* case. *Id.* at 969. In permitting the Commonwealth to refile based on this additional evidence, we did not create a "new evidence" standard or conduct any analysis of whether the "additional evidence" offered by the Commonwealth was either available or discoverable prior to the first hearing.

¶ 46 Upon review, we do not wish to depart from the "additional evidence" language in *Orlowski* by establishing a newly discovered evidence requirement. To create a requirement that the Commonwealth may only present new evidence that was either not previously available or discoverable would preclude the Commonwealth from refiling in a number of instances where it acted in good faith. This is not to suggest that the Commonwealth should be permitted to refile in all instances where it asserts that it has additional evidence to support a *prima facie* case. We find that those safeguards enunciated in *Commonwealth v. Thorpe, supra* at 64, for the refiling of charges after a preliminary hearing, are also essential in the context of the dismissal of charges after a *habeas corpus* hearing.

### Conclusion

¶ 47 In sum, we find that the trial court erred when it determined that the Commonwealth could not refile the three charges that were dismissed at the first preliminary hearing. Under the existing case law and Rule 544 of the Pennsylvania Rules of Criminal Procedure, the Commonwealth may present the same evidence presented at the first preliminary hearing or additional evidence in its effort to establish a *prima facie* case. Furthermore, we find that the trial court erred when it determined that the Commonwealth could not refile the two remaining charges that were dismissed at the first *habeas corpus* hearing. The case law of this Commonwealth recognizes that the refiling of criminal charges is a viable option following the dismissal of charges at a *habeas corpus* hearing and permits the Commonwealth to refile these charges if it possesses additional evidence. Accordingly, the Commonwealth should be granted the opportunity to establish a *prima facie* case on all

need not resort to the principles of statutory construction to divine the intention of the legislature, we have found no support for the Dissenting Opinion's interpretation of this Section in the legislative history. Nor have we found any legislative history that gives us any indication as to why the legislature chose specific words or phrases over others when drafting this section.

of the five charges unless (1) the statute of limitations had expired on the date the Commonwealth refiled the charges (January 16, 2001), (2) the trial court determines that the Commonwealth intends to harass Appellee, or (3) the refiling of the charges inures to the prejudice of Appellee.[6] *See Thorpe, supra.*

¶ 48 Order reversed. Case remanded for additional proceedings. Jurisdiction relinquished.

¶ 49 P.J.E. McEWEN files a Concurring and Dissenting Opinion in which TODD, J. joins.

McEWEN, P.J.E., Concurring and Dissenting.

¶ 1 I join in that portion of the erudite opinion of the majority which provides that the three charges dismissed by District Justice Walter F. Gadzicki following the preliminary hearing on October 4, 2000, were properly reinstated by the Commonwealth. Rule 544[7] of the Pennsylvania Rules of Criminal Procedure provides for charges to be reinstituted against a defendant following "withdrawal or dismissal"— when the attorney for the Commonwealth approves "in writing, the refiling of a complaint with the **issuing authority** who dismissed or permitted the withdrawal of the charges." Pa.R.Civ.P. 544 (emphasis supplied).[8] In the instant case, District Justice Gadzicki dismissed the charges of theft by extortion, receiving stolen property, and criminal attempt, following the October 4, 2000, preliminary hearing. Once District Attorney Castor signed the request for reinstitution of those criminal charges on December 20, 2000, those charges could be reinstated **with or without new evidence**, so long as the District Attorney believed in good faith that a *prima facie* case could be presented by the Commonwealth. Where a district justice has concluded, correctly or incorrectly,

---

6. In so holding, we decline to address Appellee's contention that the Commonwealth should not be permitted to refile the instant charges on the basis that the refiling was calculated to harass him. Appellee's Brief, at 14. Our review of the record indicates that Appellee never raised this issue at the second *habeas corpus* proceeding. Additionally, we note that the trial court did not base its dismissal of the charges on these considerations. As we find that the determination of the Commonwealth's motives, or the prejudice to Appellee, is a factual decision for the trial court on remand, we will not address this issue in the instant appeal. We do wish to stress, however, that such a consideration is particularly relevant here where, to date, the Commonwealth has offered no explanation for its failure to present the additional witnesses at the first *habeas corpus* hearing to establish two of the charges. *See Fountain*, 811 A.2d at 25; *Saunders*, 691 A.2d at 948; *Pachipko*, 677 A.2d at 1249.

7. Pa.R.Crim.P. 544 provides:

   **Rule 544. Reinstituting Charges Following Withdrawal or Dismissal**

   (A) When charges are dismissed or withdrawn at, or prior to a preliminary hearing, the attorney for the Commonwealth may reinstitute the charges by approving, in writing, the refiling of a complaint with the issuing authority who dismissed or permitted the withdrawal of the charges.
   (B) Following the refiling of a complaint pursuant to paragraph (A), if the attorney for the Commonwealth determines that the preliminary hearing should be conducted by a different issuing authority, the attorney shall file a Rule 132 motion with the clerk of courts requesting that the president judge, or a judge designated by the president judge, assign a different issuing authority to conduct the preliminary hearing. The motion shall set forth the reasons for requesting a different issuing authority.

8. "Issuing authority" is defined by Rule 103 of the Pennsylvania Rules of Criminal Procedure as "any public official having the power and authority of a magistrate, a Philadelphia bail commissioner, or a district justice." Pa.R.Crim.P. 103. *See: Viglione v. Pa. Department of Corrections*, 781 A.2d 248, 251, n. 7 (Pa.Cmwlth.2001).

that the Commonwealth has failed to establish a *prima facie* case, the Commonwealth's sole remedy is to re-arrest since the district justice's order is an interlocutory, non-appealable order.

[A] determination that the Commonwealth has failed to establish a *prima facie* case does not preclude a reassessment of that judgment before another district justice either by presenting the same evidence or by presenting a case with additional evidence. Under such circumstances the need to appeal to a higher tribunal does not exist because the initial determination does not preclude a subsequent finding to the contrary.

\* \* \* \* \* \*

In this Commonwealth, it is well-settled that the dismissal of charges after a preliminary hearing is interlocutory in nature and does not constitute a final order. *Commonwealth v. Cartagena*, 482 Pa. 6, 393 A.2d 350 (1978); *Commonwealth v. Hetherington*, [460 Pa. 17, 331 A.2d 205 (1975)] *supra*. "A finding by a committing magistrate that the Commonwealth failed to establish a *prima facie* case is not a final determination, such as an acquittal, and only entitles the accused to his liberty for the present, leaving him subject to rearrest." *Commonwealth v. Genovese, supra*, 493 Pa. at 69 n. 7, 425 A.2d at 369 n. 7, *citing Commonwealth v. Hetherington, supra*.

*Liciaga v. Court of Common Pleas of Lehigh County*, 523 Pa. 258, 266–267, 566 A.2d 246, 249–250 (1989).

¶ 2 While dicta contained in *Commonwealth v. Moore*, 749 A.2d 505 (Pa.Super.2000), which involved an appeal from an order granting a writ of habeas corpus and not a rearrest following a preliminary hearing, may have inspired some uncertainty, the decisions of our Supreme Court

on the subject and Rule 544 itself could not be clearer in authorizing rearrest in such cases with or without new evidence. *See, e.g.: Commonwealth v. LaBelle*, 531 Pa. 256, 259, 612 A.2d 418, 419–420 (1992); *Commonwealth v. Prado*, 481 Pa. 485, 393 A.2d 8 (1978); *Commonwealth v. ex rel. Fitzpatrick Mirarchi*, 481 Pa. 385, 390, 392 A.2d 1346, 1348 (1978).

¶ 3 However, an essentially different issue is triggered by the ruling of the learned Judge Maurino J. Rossanese which held that the District Attorney could not reinstitute the charges of threats and other improper influence in official and political matters, 18 Pa.C.S. § 4702, and official oppression, 18 Pa.C.S. § 5301, and proceed to a second preliminary hearing, since those charges had been the subject of the writ of habeas corpus issued by the distinguished Judge William W. Vogel on December 21, 2000.

¶ 4 The March 1, 2001, order of Judge Rossanese from which the Commonwealth took the instant appeal, was not an order entered by an "issuing authority", but rather was an order entered by a commissioned judge of the Court of Common Pleas after a hearing on a writ of habeas corpus pursuant to Section 6502 of the Judicial Code, 42 Pa.C.S. § 6502.

¶ 5 Rule 544 of the Rules of Criminal Procedure has no application to an order of the Court of Common Pleas granting habeas corpus relief, which is an immediately appealable order. *See: e.g. Commonwealth v. Hock*, 556 Pa. 409, 728 A.2d 943 (1999); *Commonwealth v. Karlson*, 449 Pa.Super. 378, 674 A.2d 249, 250, n. 3 (1996).

The great writ of *habeas corpus ad subjiciendum* was designed to test the legality of the restraints upon an accused's liberty. The Habeas Corpus Act of 1785 is entitled "[a]n Act for the

better securing personal liberty, and preventing wrongful imprisonments." Its preamble states that "personal liberty is a principal blessing derived from free constitutions of government, and certain methods of proceeding should be prescribed, so that all wrongful restraints thereof may be easily and speedily redressed." The right to the protections afforded by this writ have long been part of our Commonwealth's history. Our state constitution has provided that "the privilege of the writ of habeas corpus shall not be suspended, unless when in case of rebellion or invasion the public safety may require it." Pa. Const., art. 1, § 14. Blackstone said of this remedy: "The great and efficacious writ, in all manner of illegal confinement, is that of *habeas corpus ad subjiciendum;* directed to the person detaining another, and commanding him to produce the body of the prisoner, with the day and cause of his caption and detention." 3 W. Blackstone, Commentaries 131. In discussing the federal constitution's habeas corpus provision, *see* U.S. Const., Art. 1, § 9, the Supreme Court has stated:

We do well to bear in mind the extraordinary prestige of the Great Writ, *habeas corpus ad subjiciendum,* in Anglo–American jurisprudence * * * Received into our own law in the colonial period, given explicit recognition in the Federal Constitution, Art. I, § 9, cl. 2, incorporated in the first grant of federal court jurisdiction, Act of September 24, 1789, * * * habeas corpus was early confirmed by Chief Justice John Marshall to be a "great constitutional privilege." * * * Although in form the Great Writ is simply a mode of procedure, its history is inextricably intertwined with the growth of fundamental rights of personal liberty. For its function has

been to provide a prompt and efficacious remedy for whatever society deems to be intolerable restraints. Its root principle is that in a civilized society, government must always be accountable to the judiciary for a man's imprisonment: if the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release. * * * *Fay v. Noia,* 372 U.S. 391, 401–402, 83 S.Ct. 822, 827–830, 9 L.Ed.2d 837 (1963).

*Commonwealth v. Hess,* 489 Pa. 580, 585–586, 414 A.2d 1043, 1045–1046 (1980) (footnote omitted).

¶ 6 Our legislature has provided a statutory framework for the exercise of the constitutional right to petition for habeas corpus relief. Section 6502(a) of the Judicial Code provides: "Any judge of a court of record may issue the writ of habeas corpus to inquire into the cause of detention of any person or for any other lawful purpose." 42 Pa.C.S. § 6502(a). Section 6503(a) of the Judicial Code provides, in relevant part, that "an application for habeas corpus to inquire into the cause of detention may be brought by or on behalf of any person restrained of his liberty within this Commonwealth under any pretense whatsoever." 42 Pa.C.S. § 6503(a).

It is settled that a petition for a writ of habeas corpus is the proper means for testing a pre-trial finding that the Commonwealth has sufficient evidence to establish a *prima facie* case. *Commonwealth v. Morman,* 373 Pa.Super. 360, 363, 541 A.2d 356, 357 (1988); *see also Commonwealth v. Hetherington,* 460 Pa. 17, 331 A.2d 205 (1975). A pre-trial petition for a writ of habeas corpus, therefore, is similar in purpose to a preliminary hearing. *See Commonwealth v. Morman, supra,* 373 Pa.Super. at 365, 541 A.2d at 359. " ' The primary reason

for the preliminary hearing is to protect an individual's right against unlawful arrest and detention. It seeks to prevent a person from being imprisoned or required to enter bail for a crime which was never committed, or for a crime with which there is no evidence of his connection ....'" *Id.* (citations omitted). Thus, the focus of a pre-trial habeas petition is on "whether sufficient Commonwealth evidence exists to require a defendant to be held in government 'custody' until he may be brought to trial." *Id.*, 373 Pa.Superior Ct. at 367, 541 A.2d at 360. In making this pre-trial determination, **the habeas court is not limited to reviewing the evidence presented at the preliminary hearing; instead, "the Commonwealth may present additional evidence at the habeas corpus stage in its effort to establish at least *prima facie* that a crime has been committed and that the accused is the person who committed it."** *Id.*, 373 Pa. Superior Ct. at 365–366, 541 A.2d at 359.

*Commonwealth v. Scott,* 396 Pa.Super. 339, 578 A.2d 933, 936–937 (1990), *appeal denied,* 528 Pa. 629, 598 A.2d 283 (1991) (emphasis supplied).

A petition for habeas corpus relief must specifically allege facts, which if true would entitle the defendant to an award of writ of habeas corpus. *Balsamo v. Mazurkiewicz,* 417 Pa.Super. 36, 611 A.2d 1250 (1992). However, where a defendant requests a writ of habeas corpus on the grounds that the Commonwealth has failed to establish a prima facie case, **the Commonwealth may present further evidence to ensure that it has established a prima facie case.** *Commonwealth v. Morman,* 373 Pa.Super. 360, 541 A.2d 356 (1988) **(the purpose of a habeas corpus proceeding is not merely to review the prior preliminary hearing but rather to deter-**mine the legality of the existing restraint on the petitioner's liberty). **The evidence may consist of evidence previously presented at the preliminary hearing as well as any additional evidence.** *Id.*

*Commonwealth v. Lawson,* 437 Pa.Super. 521, 650 A.2d 876, 879 (1994), *appeal denied,* 540 Pa. 596, 655 A.2d 985 (1995) (emphasis supplied).

¶ 7 The legislature, aware that the Commonwealth is under no restriction at the habeas hearing as to the nature or the volume of evidence which it may produce in an effort to establish a *prima facie* case, and, also aware of the Commonwealth's right to an immediate appeal from an adverse decision by the habeas court, has prohibited the rearrest of a defendant by the Commonwealth based on substantially the same facts. Section 6505 of the Judicial Code provides, in relevant part:

Any person who shall ... without express authorization from a judge of a court of record, **recommit on substantially the same facts and circumstances** any person set at large upon a habeas corpus, ... commits a misdemeanor of the second degree.

42 Pa.C.S. § 6505 (emphasis supplied).

¶ 8 I am of the opinion that the legislature purposely utilized the phrase "facts and circumstances" rather than the phrase "same evidence" when it prohibited the rearrest of an individual released by a judge of the Court of Common Pleas after a habeas hearing. The reason for the use of the phrase "facts and circumstances" is that the Commonwealth, in response to a petition for writ of habeas corpus, is **not** restricted by the evidence produced at the preliminary hearing but rather is free to and in the exercise of its duties should produce all evidence at its disposal necessary to establish a *prima facie* case. A

hearing on a writ of habeas corpus, 42 Pa.C.S. § 6504, is a constitutionally based legal challenge addressed to the ability of the Commonwealth to establish a *prima facie* case against the defendant. No legitimate purpose is served by allowing the Commonwealth to decline to produce evidence in response to a writ of habeas corpus—although, apparently, that is precisely what occurred in the instant case.

¶ 9 These settled principles of law were the basis for the holding of our Supreme Court in *Commonwealth v. Hetherington,* 460 Pa. 17, 331 A.2d 205 (1975), which I believe controls the resolution of this issue. The defendant in *Hetherington* was a Commonwealth title inspector arrested on charges of blackmail, extortion, receiving a bribe, and malfeasance, misfeasance, and nonfeasance of office, as a result of accusations by a motor vehicle dealer that the defendant had offered to "handle" certain title irregularities for him.

¶ 10 Following the preliminary hearing, all charges other than blackmail and extortion were held for trial. The defendant then filed, and a judge of the Court of Common Pleas granted, a "Motion to Quash" the four charges on which he had been held over by the magistrate. The Commonwealth then filed a petition to rearrest the defendant on all charges, including those dismissed by the Court of Common Pleas. The trial court denied the petition without a hearing, the Superior Court affirmed, and the Supreme Court granted allowance of appeal.

¶ 11 The Supreme Court, noted that the rule, applicable even when a judge of the Court of Common Pleas is sitting as a committing magistrate, is that where charges are dismissed after the preliminary hearing for failure to establish a *prima facie* case, the Commonwealth's "only recourse ... was rearrest." *Id.* at 22, 331 A.2d at 208. The Supreme Court held, as

to the four charges which had been dismissed by the Court of Common Pleas in response to the defendant's motion, that the Commonwealth was precluded from collaterally attacking the ruling of the trial court by rearresting the defendant as a result of the failure of the Commonwealth to file a timely appeal from the trial court's order:

> The confusion surrounding the second issue is in large measure due to a misunderstanding as to the nature of the proceeding involved. The appellee incorrectly styled his application as a "Motion to Quash" the transcript of the committing magistrate which he asserts to be in the nature of a demurrer. A demurrer however is a trial motion which is properly entertained only after the Commonwealth has presented it case in chief. 1937, June, 5, P.L. 1703, No. 357 § 1; 19 P.S. § 481. The established and accepted method for testing a finding of a prima facie case pre-trial, within this jurisdiction, has been by a writ of habeas corpus. 1937, July 1, P.L. 2664, § 2; 12 P.S. § 1893.
>
> Nor can we accept the Commonwealth's position that the proceeding before the second common pleas judge should be considered as a petition for rearrest. This ignores the fact that the committing magistrate originally held these charges for action by the grand jury. When the matter was reviewed by the first common pleas judge it was in the nature of a petition for a writ of habeas corpus which is a proper subject for appellate review. Act of May 25, 1951, P.L. 415, § 7 as amended, Act of June 3, 1971, P.L. 143, No. 6, § 1, 12 P.S. § 1907 (Supp.1974–75). *See also Commonwealth ex rel. Tiller v. Dye,* 177 Pa.Super. 388, 391, 110 A.2d 748 (1955) and cases cited. The Commonwealth's failure to perfect a timely appeal from that order precludes a consideration of the merits at this time.

*Commonwealth v. Hetherington, supra* at 23–24, 331 A.2d at 209. *Accord: Commonwealth v. McNair,* 29 D & C 2nd 585 (Allegheny Co.1962).

¶ 12 In the instant case, in response to the properly filed initial motion for writ of habeas corpus, the Commonwealth was required to produce all evidence in its possession which was necessary to establish a *prima facie* case against the appellee Carbo as to the charges bound over by the district justice. For reasons not discernible from the record, the Commonwealth did not present the testimony of the other officers which it now claims would have sufficed to establish a *prima facie* case [9] and, after submitting its memorandum of law in opposition to habeas relief, indicated to Judge Vogel that it no longer opposed habeas corpus relief. The order subsequently issued by Judge Vogel was an appealable order and one which, under Section 6505 of the Judicial Code, the Commonwealth may not now disregard.

¶ 13 Our scope of review of an order granting habeas corpus relief is well settled:

> In evaluating an accused's entitlement to pre-trial habeas corpus relief, a trial court must determine whether there is sufficient evidence to make out a prima facie case that the defendant committed the crime with which he or she is charged. *See generally Commonwealth v. Rachau,* 670 A.2d 731, 733 n. 5 (Pa. Cmwlth.1996) (*citing Commonwealth v. Kowalek,* 436 Pa.Super. 361, 364, 647 A.2d 948, 949 (1994)). The Commonwealth has the burden to show probable cause that the defendant committed the offense. *Id.* An appellate court must generally consider whether the record supports the trial court's factual find-

ings, and whether the inferences and legal conclusions drawn from those findings are free of error. *See Commonwealth v. Besch,* 544 Pa. 1, 2 n. 1, 674 A.2d 655, 655 n. 1 (1996); *Commonwealth v. Gordon,* 546 Pa. 65, 73, 683 A.2d 253, 257 (1996).

*Commonwealth v. Hock,* 556 Pa. 409, 414–415, 728 A.2d 943, 945 (1999) (footnote omitted).

¶ 14 Thus, while I agree with my learned colleagues of the majority that the Commonwealth may rearrest on the charges dismissed by District Justice Gadzicki, I share the view of Judge Rossanese that, where the Commonwealth failed to offer evidence to establish a *prima facie* case at the first habeas hearing, and failed to perfect a timely appeal from the decision of Judge Vogel, the Commonwealth may not rearrest on the charges of threats and other improper influence in official and political matters, 18 Pa.C.S. § 4702, and official oppression, 18 Pa.C.S. § 5301.

¶ 15 Judge TODD joins.

---

9. The representation of an attorney as to the facts to which he or she believes a witness will testify is not evidence.