J-A11001-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| KEITH HARRIS, | |
| Appellee | No. 2525 EDA 2014 |

Appeal from the Order Entered July 30, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): MC-51-CR-0048044-2013

BEFORE:  SHOGAN, MUNDY, and FITZGERALD,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED JULY 13, 2016**

The Commonwealth appeals from the order denying its motion to refile criminal charges against Appellee, Keith Harris, in the above-captioned matter after the court of common pleas determined the Commonwealth failed to present a *prima facie* case to permit a trial.  Upon careful review, we reverse.

We summarize the procedural history of this case as follows.  In the early evening of December 19, 2013, Philadelphia Police were conducting surveillance in the 2900 block of Kip Street when they observed Appellee's involvement with Ricardo Correa to the extent that they believed Appellee was participating in the sale of narcotics with Mr. Correa.  On December 20,

_____

[*] Former Justice specially assigned to the Superior Court.

2013, Appellee was charged with possession of a controlled substance, possession of a controlled substance with intent to deliver, and conspiracy.

At a preliminary hearing held before the Honorable Nazario Jimenez of the Municipal Court of Philadelphia County on April 16, 2014, the charges brought against Appellee were dismissed due to lack of evidence.[1]   On May 16, 2014, the Commonwealth filed a notice of refiling of the criminal complaint against Appellee.  On July 30, 2014, a preliminary hearing was conducted before the Honorable Harold M. Kane of the Court of Common Pleas of Philadelphia County.  At the close of the hearing, Judge Kane denied the Commonwealth's motion to refile the charges against Appellee.  The Commonwealth then filed a motion for reconsideration on August 1, 2014, which was never addressed.   Thereafter, on August 28, 2014, the Commonwealth filed this timely appeal.[2]

The Commonwealth presents the following issue for our consideration:

_____

[1]  It is well settled that "[a] magistrate's decision to dismiss criminal charges after a preliminary hearing is unappealable." ***Commonwealth v. Carbo***, 822 A.2d 60, 64 (Pa. Super. 2003) (citation omitted).  "Therefore, the reinstitution of charges is the only recourse available to the Commonwealth after it fails to establish a *prima facie* case at a preliminary hearing." ***Id***. As will be discussed *infra*, the Commonwealth refiled the charges against Appellant, and the July 30, 2014 order from which it is now appealing essentially dismissed those charges for a second time.

[2]  Although not ordered to do so by the trial court, on August 28, 2014, the Commonwealth filed a Pa.R.A.P. 1925(b) statement.  The trial court has not prepared an opinion pursuant to Pa.R.A.P. 1925(a).

- 2 -

Properly viewed in the light most favorable to the Commonwealth, did the evidence at the preliminary hearing establish a *prima facie* case of possession of narcotics with intent to deliver and conspiracy?

Commonwealth's Brief at 4.

The Commonwealth argues that the court of common pleas erred in denying the Commonwealth's motion to refile the charges against Appellee, claiming that it established a *prima facie* case that Appellee conspired with Mr. Correa to sell drugs. The Commonwealth points to the evidence that Appellee accepted a large sum of cash from Mr. Correa, repeatedly entered an abandoned home that contained 140 vials of crack cocaine, as well as thirty packets of heroin and $370.00, and that Appellee "stood watch" on a street corner while Mr. Correa sold drugs to two individuals. The Commonwealth claims that the trial court's failure to find that Appellee's actions amounted to the statutory definition of conspiracy was legal error. We are constrained to agree.

We begin by noting that "[t]he question of the evidentiary sufficiency of the Commonwealth's *prima facie* case is one of law," and as such, our review is plenary. **Commonwealth v. Huggins**, 836 A.2d 862, 865 (Pa. 2003). In **Huggins**, our Supreme Court explained:

> At the pre-trial stage of a criminal prosecution, it is not necessary for the Commonwealth to prove the defendant's guilt beyond a reasonable doubt, but rather, its burden is merely to put forth a *prima facie* case of the defendant's guilt. A *prima facie* case exists when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes sufficient probable cause to warrant the belief that

- 3 -

the accused committed the offense. The evidence need only be such that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to go to the jury. Moreover, "[i]nferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the Commonwealth's case."

***Huggins***, 836 A.2d at 866 (citations omitted).

Here, the Commonwealth charged Appellee with the crimes of possession of narcotics, possession with intent to deliver, and criminal conspiracy. Regarding the crime of possession with intent to deliver, we have stated the following:

To establish the offense of possession of a controlled substance with intent to deliver, the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a controlled substance with the intent to deliver it. The intent to deliver can be inferred from an examination of the surrounding facts and circumstances. Factors to consider in determining whether the drugs were possessed with the intent to deliver include the particular method of packaging, the form of the drug, and the behavior of the defendant.

The Commonwealth has the option to establish actual or constructive possession.

Constructive possession requires proof of the ability to exercise conscious dominion over the substance, the power to control the contraband, and the intent to exercise such control. Constructive possession may be established by the totality of the circumstances.

***Commonwealth v. Perez***, 931 A.2d 703, 707-708 (Pa. Super. 2007) (citations and quotation marks omitted).

Further, with regard to the crime of criminal conspiracy we have stated:

> Circumstantial evidence may provide proof of the conspiracy. The conduct of the parties and the circumstances surrounding such conduct may create a "web of evidence" linking the accused to the alleged conspiracy beyond a reasonable doubt. Additionally:
>
>> An agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode. These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail.
>
> "While the Commonwealth is not required to prove a written or express agreement, a tacit agreement must be established by reasonable inferences arising from the facts and circumstances and not by mere suspicion or conjecture." Circumstances like an association between alleged conspirators, knowledge of the commission of the crime, presence at the scene of the crime, and/or participation in the object of the conspiracy, are relevant when taken together in context, but individually each is insufficient to prove a conspiracy.

*Perez*, 931 A.2d at 708. Thus, even if a defendant was not the principal actor in a drug transaction, he would be guilty of the underlying crime based upon actions taken by co-conspirators in furtherance of the commission of the crime. *See Commonwealth v. McCall*, 911 A.2d 992, 997 (Pa. Super. 2006) (evidence sufficient to sustain possession with intent to deliver and conspiracy convictions where the defendant stood watch during drug

- 5 -

transactions and received proceeds even though the defendant never handled drugs).

The facts, as presented to the trial court at the July 30, 2014 hearing, are as follows:

> The facts of this case are [Mr. Correa] is seen by police officers counting United States currency which [Mr. Correa] gives to [Appellee] at the beginning of this case.
>
> This is approximately 7:15 PM, police officers are observing [Mr. Correa] and [Appellee] on the street.
>
> When [Mr. Correa] hands the money to [Appellee] he says there you go that's $115.00 to [Appellee].
>
> [Appellee] takes the money. The two are standing outside of an abandoned property.[3] They go into the abandoned property together, Your Honor, and then they come out approximately one to two minutes later.
>
> When they come out of the abandoned property together what happens is they go to the street corner and a buyer approaches.
>
> Two sales take place at that time, Your Honor. Both sales are done by [Mr. Correa]. One of those buyers [is] stopped and has on their person -- oh, one other factor that I need to mention is when they come out of this abandoned property they don't have anything in their hands when they go in. When they come out [Mr. Correa] is handling a clear bag.
>
> [Mr. Correa] does the two sales from that clear bag. So both of the sales are --
>
> * * *

_____

[3] At the hearing on April 16, 2014, the police officer described the abandoned property as having no electricity, no windows, and being strewn with trash. N.T., 4/16/14, at 5.

Actually, [Mr. Correa] is holding it in his mouth initially when he walks out the door, Your Honor. But [Mr. Correa is] holding the bag and they do two sales from the corner from this bag. Again, that's [Mr. Correa].

However, the second buyer is stopped, Your Honor, and drugs are recovered from that buyer. They are two black vials of cocaine with black caps on them.

What happens next is [Appellee] is again seen counting money after the second sale. Immediately afterwards he is seen counting money standing next to [Mr. Correa].

[Appellee] then goes into the abandoned property again for one additional minute, Your Honor. [Appellee] comes back out. After that, Your Honor, there is another sale. What happens next is police officers go in to stop [Mr. Correa] and [Appellee].

Off of [Mr. Correa] they find eight matching vials of cocaine on his person with the black caps on them. They also find $100.00 United States currency.

In the property, inside the abandoned property, twenty feet from the door there is a hole in the floor. There is one hundred and forty vials of cocaine, Your Honor, and thirty packets of heroin, too. They matched the cocaine that's sold and they matched the other cocaine that is recovered.

And they also find $370.00 United States currency in bags on the floor, Your Honor.[4] So those are the facts of this case.

N.T., 7/30/14, at 3-6.

Upon review of the foregoing evidence, we are constrained to conclude that the facts stated above, viewed in the light most favorable to the Commonwealth, amounted to enough evidence to establish a *prima facie*

_____

[4] At the April 16, 2014 hearing, the police officer testified that he recovered only $55.00 from Appellee's person. N.T., 4/16/14, at 8.

- 7 -

case of possession, possession with intent to deliver, and criminal conspiracy. Accordingly, we conclude the trial court erred when it denied the Commonwealth's motion to refile the charges that were dismissed by the municipal court. Hence, the trial court's order is reversed and the case is remanded for further proceedings consistent with this memorandum.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/13/2016